Taylor *v.* Atwood.

HENRY R. TAYLOR, TRUSTEE, *vs.* HENRY S. ATWOOD AND
ANOTHER.

*K* owed $1,365 of unsecured debts, and owned real estate of the value of $1,255
above the mortgages on it and less than $200 of personal property. One
piece of real estate had been attached upon a debt of $191, and another suit
had been brought against him without attachment for $76. He was an ignorant
man, incapable of transacting business intelligently, and was greatly disturbed
by the condition of his affairs. In these circumstances he applied to *A* for
assistance, proposing that he pay his debts, take a deed of his property and
give him five years to redeem it. *A* was a creditor to the amount of $227.
After some delay it was arranged between them that he should give an abso-
lute deed to *A* of all his real estate, consisting of two parcels, in consideration
of *A's* assuming the mortgages on it, cancelling his own claim of $227, and
paying the debt due to the attaching creditor, which was $191; and this
arrangement was carried out. *A* soon after paid the other debt in suit, which
was $76, and a little later sold and conveyed one of the pieces to *W*, who
bought in good faith, for $825—which was $331 more than he gave for the
whole. *K* having gone into insolvency, the trustee brought a bill in equity to
compel *A* to reconvey. Held —

1. That whatever rights in equity *K* would have had in the matter if he had
   not gone into insolvency, were vested in his trustee in insolvency.
2. That the case was one of fraud against which equity would give relief.
3. That the relief should be by requiring a reconveyance of the piece of land
   retained by *A*, and the payment of the value, above the mortgage upon it, of
   the other piece which he had conveyed to *W*, subject to a certain allowance in
   his favor.
4. That no allowance should be made for his own claim of $227, nor for the
   unsecured claim of $76 which he had paid, as neither of these claims was
   entitled to preference over the general debts of *K;* but that he should be
   allowed the claim which he had paid of $191, as this was secured by attach-
   ment of the land conveyed to *W*, and thus entitled to a preference.

The doctrine may be laid down as generally true that the acts and contracts of
persons who are of weak understanding and therefore liable to imposition,
will be held void in courts of equity, if the nature of the act or contract
justify the conclusion that the party has not exercised a deliberate judgment,
but has been imposed upon or overcome by cunning, artifice or undue influence.

Courts of equity as a general rule, subject to but few exceptions, exercise juris-
diction in cases of fraud, sometimes concurrent with and sometimes exclusive
of courts of law. But there are many cases in which fraud is utterly irre-
mediable at law, and courts of equity in relieving against it often go not only
beyond but even contrary to the rules of law.

Where a deed, though not absolutely void at law, has yet been obtained under
inequitable circumstances, it has often been allowed to stand as security for
the sum really paid.

Where, in the above case, *K* had in the first instance proposed to *A* to take an

Taylor *v.* Atwood.

absolute conveyance of all his real estate and pay his debts, and give him five years to redeem; and *A* had induced him to convey to him his real estate on wholly other and inequitable conditions and with no right to redeem, and the court decreed a reconveyance of the land retained and a payment of the proceeds of that sold, it was held that it was no error that the court did not adopt as the basis of its decree *K's* original proposition, as *A* had not accepted it, and as it was a matter resting wholly in the sound discretion of the court if it had appeared that such an agreement had been made; and that the court had properly exercised its discretion.

Where upon a petition in equity brought by a trustee in insolvency and prosecuted to final judgment in his favor, the record showed that he was duly appointed trustee, it was held that the bringing and prosecution of the suit as trustee were conclusive evidence of his having accepted the trust and of his acting as trustee.

Also that they were primâ facie evidence that he was duly qualified, and that this was sufficient in the absence of evidence to the contrary.

BILL IN EQUITY, brought to the Superior Court in Hartford County. The petitioner was trustee of the assigned estate of William M. Kellogg, an insolvent debtor, and sought relief against a conveyance of the real estate of the debtor claimed to have been fraudulently obtained of him by the respondent Atwood. Facts found and a decree rendered in favor of the petitioner, (*Carpenter, J.*) Motion in error by the respondent Atwood. The case is fully stated in the opinion.

*S. O. Prentice*, for the plaintiff in error.

*R. Welles* and *S. W. Adams*, for the defendant in error.

HOVEY, J.* This case comes here upon a motion in error to obtain the reversal of a decree of the Superior Court founded, mainly, upon the following facts:—One William M. Kellogg, being the owner of certain real and personal property in the town of Rocky Hill, and being indebted in a considerable sum to several parties, two of whom had sued him for the recovery of their claims, applied to the defendant Atwood, another creditor, for assistance, requesting him to pay his debts, take a deed of his real estate as security, and give him five years in which to redeem the property. Atwood gave no

---

* Judge HOVEY of the Superior Court sat in the place of Judge CARPENTER, who having tried the case below, was disqualified.

definite answer to this application at the time it was made, but subsequently, having ascertained upon inquiry that one of the claims in suit was secured by attachment upon the real estate, he took from Kellogg an absolute deed of warranty of all his real estate, but made no provision in the deed or otherwise for the payment of his unsecured debts. The real estate was in two parcels, one of which, called the homestead, was of the value of $1,825, but was subject to a mortgage for $1,000; the other, which was in the Rocky Hill meadows, was of the value of $1,000, but was subject to a mortgage for $600. It was expressed in the deed that Atwood should assume and pay the two mortgages. Kellogg's personal property available for the payment of debts was worth less than $200. Atwood's claim against Kellogg amounted to about $227; the amount of the claim secured by attachment upon the real estate was $191.91; the other claim in suit amounted to $76.43, and the remaining unsecured claims amounted to $869.57. Kellogg was an ignorant and illiterate man, and at the time of executing the deed to Atwood was laboring under so much excitement arising from pecuniary embarrassment and the suits pending against him that he was incapable of making such a contract or of comprehending the nature, character and consequences of the business he was transacting. These facts were known to Atwood when he took the deed. The only consideration for the deed, as Atwood testified at the hearing, was his own claim against Kellogg, and his assumption of the debt which was secured by attachment on the real estate, amounting in the whole to about $418; though he paid in addition to that amount, after he obtained the deed, the other claim in suit, amounting to $76.43. About a month after the deed was taken by Atwood he conveyed the homestead to the respondent Mary Warriner, who took the conveyance in good faith, for a valuable consideration and without notice of the circumstances under which the deed was obtained. A part of the consideration was the assumption by her of the mortgage upon the property, of one thousand dollars. And about a month later Kellogg made an assignment of his property for the benefit of his creditors

under the insolvent laws of this state, and the petitioner was duly appointed trustee of the property assigned.

The decree of the Superior Court upon these facts ordered the respondent Atwood, within a reasonable time, to convey to the petitioner as trustee aforesaid, the parcel of land in the Rocky Hill meadows, free of all incumbrances created by him or by any one under him, and deliver to him possession of the same, and declared so much of the deed from Kellogg to Atwood as conveyed to the latter the meadow land to be null and void, and the title to that land, subject to the mortgage upon it of $600, to be vested in the petitioner as trustee for the benefit of Kellogg's creditors. It also ordered the respondent Atwood, within a reasonable time, to pay to the petitioner as trustee the sum of $825, the sum received by him from the respondent Warriner for the homestead, with interest thereon from March 8th, 1879. And it perpetually enjoined the respondent Atwood from proceeding in or any further prosecuting an action of ejectment pending in the Superior Court in which he was plaintiff and Kellogg defendant, to recover possession of said meadow land.

The grounds upon which the reversal of this decree is sought by the plaintiff in error, are—

1. That it does not appear from the record or from the finding of the court below that the petitioner has ever accepted the office of trustee of the assigned estate of Kellogg, or has ever qualified as such, or that he was acting in that capacity when this suit was brought.

2. That the record does not show that the petitioner is at present entitled to any relief in equity, but shows that he has adequate remedy at law.

3. That the court below erred in declaring to be void so much of the deed from Kellogg to Atwood as conveyed to the latter the meadow land, and in not decreeing that said deed, as to that land, should be and remain an equitable mortgage in Atwood's hands.

4. That the court erred in decreeing that the sum of eight hundred and twenty-five dollars be paid by Atwood to the petitioner, without making any deduction or allowance for the

amount of Atwood's own claim and the sums paid by him on the two claims in suit.

5.  That the court should have allowed to Atwood $191.91, the amount of the claim secured by attachment upon the property conveyed to him by Kellogg, and paid by Atwood to free the property from the attachment.

6.  That the relief granted was improper, as not placing or attempting to place Atwood in *statu quo*, but leaving him in a worse position than before the conveyance, and Kellogg's estate in a better position than he was at that time.

7.  That the court erred in not decreeing a specific performance of the contract between the parties in accordance with the terms of the proposition made by Kellogg to Atwood, and impliedly accepted by the acceptance of the deed of the premises.

Other errors are assigned, but a decision of the questions which they raise, being unnecessary to a proper disposition of the case, a statement of them is omitted.

The first question may be disposed of in a few words. The record shows that the petitioner was duly appointed trustee of the estate assigned by Kellogg for the benefit of his creditors; and the bringing of the present suit and the prosecution of it to a final decree by him, furnish conclusive evidence of his acceptance of the trust and that he was acting in the capacity of trustee of the assigned estate at the time the suit was brought. They also furnish *primâ facie* evidence that he was duly qualified to act in that capacity; and that was sufficient, in the absence of evidence to the contrary, to satisfy the requirements of the law. *Pond* v. *Hine*, 21 Conn., 519; *O'Neill* v. *Henderson*, 15 Ark., 235; *Penny* v. *Davis*, 3 B. Monr., 314 ; Perry on Trusts, § 261.

The next question is whether the petitioner is entitled to equitable relief. The plaintiff in error contends that he has adequate remedy at law.

It is a general rule, subject to but few exceptions, that courts of equity exercise jurisdiction in cases of fraud, sometimes concurrent with, and sometimes exclusive of other courts. 1 Story Eq. Jur., § 184. But there are many cases

in which fraud is utterly irremediable at law; and courts of equity, in relieving against it, often go, not only beyond, but even contrary to the rules of law.   Ib.   Fraud, in the sense of a court of equity, includes all acts, omissions and concealments which involve a breach of legal or equitable duty, trust or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another.   Id., § 187.   In the leading case of *Chesterfield* v. *Janssen*, 2 Ves., 155, Lord Hardwicke gives the following enumeration of the different kinds of frauds that a court of equity has an undoubted jurisdiction to relieve against. "First: Fraud, which is *dolus malus*, may be actual, arising from facts and circumstances of imposition, which is the plainest case.   Secondly: It may be apparent from the intrinsic nature and subject of the bargain itself, such as no man in his senses, and not under delusion, would make on the one hand, and as no honest and fair man would accept on the other; which are inequitable and unconscientious bargains, and of such even the common law has taken notice. Thirdly: Fraud which may be presumed from the circumstances and condition of the parties contracting; and this goes farther than the rule of law, which is that it must be proved, not presumed.   But it is wisely established in the court of chancery, to prevent taking surreptitious advantage of the weakness or necessity of another, which knowingly to do is equally against conscience as to take advantage of his ignorance.   Fourthly: Fraud which may be collected and inferred, in the consideration of a court of equity, from the nature and circumstances of the transaction, as being an imposition and deceit on other persons, not parties to the fraudulent agreement.   Fifthly: Fraud in what are called catching bargains with heirs, reversioners or expectants, in the life of the parents."

The facts appearing upon the record before us disclose a case of gross abuse of confidence, imposition and fraud. Kellogg was ignorant and illiterate.   He was in debt to the amount of about $1,365.   He had real estate of the value of $1,225 over and above the mortgages upon it, and less than

$200 of personal property available for the payment of debts. Two of his creditors had commenced suits against him, and one of them, whose claim amounted to $191.91, had attached his real estate. This greatly excited him, and in his excitement he applied to the respondent Atwood, another creditor, to advance money to pay his debts and take security upon his property, and give him five years for redemption. It does not appear that Atwood made any inquiry in respect to Kellogg's indebtedness, except as to that portion of it which was secured by attachment. That portion he did ascertain, and he paid it. He then took from Kellogg an absolute deed of all his real estate, without making any provision for the payment of his unsecured debts; and he did so with full knowledge that Kellogg was incapable of making such a contract or of comprehending the nature, character and consequences of the business he was transacting. He afterwards paid another of Kellogg's debts amounting to $76.43, and then sold that portion of the estate called the homestead for $825—a sum $331.09 in excess of the consideration which he paid for the entire property. Under such circumstances, if Kellogg, instead of making an assignment of his property to a trustee for the benefit of his creditors under the insolvent laws, had applied to the Superior Court as a court of equity for relief, it would, according to well established principles, have been granted.

In the case of *Clarkson* v. *Hanway*, 2 P. Wms., 203, a conveyance made by a weak man easy to be imposed upon was set aside, though there was no proof of any particular efforts made to prevail upon him to execute it. But the deed was prepared by the grantee, and there was no proof that the grantor gave any instructions, or that it was read to him; the Master of the Rolls observing that fraud was apparent, and judging upon the face of the deed is judging upon evidence which cannot err.

In *Harding* v. *Handy*, 2 Mason, 125, a conveyance executed by a father-in-law to his son-in-law for a nominal consideration and upon a verbal arrangement that it should be considered a trust for the maintenance of the grantor, and after his death

Taylor *v.* Atwood.

for the benefit of his heirs, was, after his death, set aside except as security for actual advances and charges, upon application of his heirs, on the ground that it was obtained from him when his mind was enfeebled by age and other causes. "Extreme weakness," said Mr. Justice Story in deciding the case, "will raise an almost necessary presumption of imposition, even when it stops short of legal incapacity; and though a contract in the ordinary course of things, reasonably made with such a person, might be admitted to stand, yet if it should appear to be of such a nature that such a person could not be capable of measuring its extent or importance, its reasonableness or its value, fully and fairly, it cannot be that the law is so much at variance with common sense as to uphold it." The case subsequently went to the Supreme Court of the United States. Chief Justice Marshall, who delivered the opinion, after speaking of the conveyance and of other deeds executed by the deceased grantor, said: —"If these deeds were obtained by the exercise of undue influence over a man whose mind had ceased to be the safe guide of his actions, it is against conscience for him who has obtained them to derive any advantage from them. It is the province of a court of conscience to set them aside. That a court of equity will interpose in such a case is among its best settled principles."

The Supreme Court of Vermont in the case of *Mann* v. *Betterly*, 21 Verm., 326, after stating it to be a well settled principle that mere inadequacy of consideration furnishes no sufficient ground for the interference of equity to set aside a deed, say: "but it is equally well settled that inadequacy coupled with such a degree of weakness and imbecility of intellect as would justify the inference that such weakness had been taken advantage of, would afford sufficient ground for such interference." The same court in the case of *Conant* v. *Jackson*, 16 Verm., 335, use this language:—"The court will not measure the degree of understanding and say that a weak man may not contract or give away his property; yet they will scrutinize the gift made by a man of feeble understanding, or one whose powers of memory and whose mind

and judgment are gone or impaired, from whatever cause it may have proceeded; and if made to one in whom confidence has been reposed, and no sufficient reason appears for the same, and the consideration be wholly inadequate, so as to afford evidence that the person did not understand the nature of the contract or gift he was making, relief against such a contract will be afforded in equity."

In the recent case of *Allore* v. *Jewell*, 94 U. States R., 506, which was a suit brought by the heir at law of one Marie Genevieve Thibault, late of Detroit, Michigan, deceased, to cancel a deed of land alleged to have been obtained from her by the defendant a few weeks before her death, when from her condition she was incapable of understanding the nature and effect of the transaction, Mr. Justice Field in delivering the opinion of the court said:—"It is not necessary in order to secure the aid of equity to prove that the deceased was at the time insane, or in such a state of mental imbecility as to render her incapable of executing a valid deed. It is sufficient to show that from her sickness and infirmities she was at the time in a condition of great mental weakness, and that there was gross inadequacy of consideration. From these circumstances imposition or undue influence will be inferred."

Judge Story, in his Commentaries on Equity Jurisprudence, says: "The doctrine, therefore, may be laid down as generally true, that the acts and contracts of persons who are of weak understandings, and who are thereby liable to imposition, will be held void in courts of equity, if the nature of the act or contract justify the conclusion that the party has not exercised a deliberate judgment, but that he has been imposed upon, circumvented or overcome by cunning or artifice or undue influence." 1 Story Eq. Jur., § 238; citing *Gartside* v. *Isherwood*, 1 Bro. Ch. App., 560, 561; *Rippy* v. *Grant*, 4 Ircd. Eq., 443; *Tracey* v. *Sacket*, 1 Ohio St., 58; *Whiteburn* v. *Hines*, 1 Mumf., 557; *Buffalow* v. *Buffalow*, 2 Dev. & Batt. Eq., 241; *Dunn* v. *Chambers*, 4 Barb., 376; *Hunt* v. *Moore*, 2 Barr, 105.

The question then arises whether the petitioner, as trustee of the estate assigned by Kellogg for the benefit of his credit-

ors, is entitled to the same relief which would have been granted to Kellogg upon his application if he had made no assignment in insolvency.   The petitioner, on his appointment or approval as trustee by the court of probate, became vested with the title to all the property and rights of property, legal and equitable, which Kellogg had at the time of making his assignment and lodging it for record in the office of that court, excepting only such property as is excepted by the insolvent law.   And by virtue of his appointment he became the representative of Kellogg's creditors in respect to treating as void the conveyance made to the respondent Atwood, and had the same standing in court and the same right to relief in the present case that Kellogg would have had if the suit had been brought in his name before the assignment was made.   *Palmer, Trustee,* v. *Thayer,* 28 Conn., 237; *Shipman, Trustee,* v. *Etna Insurance Co.,* 29 Conn., 245; *Converse* v. *Hartley,* 31 Conn., 372; *Gaylor* v. *Harding,* 37 Conn., 518; *Thomas, Trustee,* v. *Beck,* 39 Conn., 241; *Paulk, Trustee,* v. *Cook,* id., 566.   There was, therefore, no error in the decision of the court that the petitioner was entitled to equitable relief.

The third, fourth, fifth and sixth errors assigned are so intimately connected that they may be considered together.

In several English cases, where the defendant appears to have been a participator in the fraud, but the proof was not entirely clear, the court has set aside the conveyance, decreeing it however to stand as a security for the money actually paid.   *Herne* v. *Meeres,* 1 Vern., 465, (*S. C.,* 2 Bro., 177,) was a case of this sort.   The Lord Chancellor observed that at law, where a conveyance is found to be fraudulent, the creditor comes in and avoids it all without payment of any consideration money; but in equity, where the court can decree back the principal and interest, there is no hurt done; and a lesser matter in such case will serve to set a conveyance aside. He accordingly decreed that the purchaser reconvey upon payment of the consideration with interest.   *Addison* v. *Dawson,* 2 Vern., 678, and *Clarkson* v. *Hanway,* 2 P. Wms., 203, were cases in which upon setting aside the conveyances

the court decreed the defendants to be refunded what they had actually paid. In *Boyd* v. *Dunlap*, 1 Johns. Ch., 478, where the consideration was very inadequate, but the proof of actual fraud in the defendant doubtful, the court set aside the conveyance, allowing it to stand as security for the money actually paid. Chancellor Kent in that case observes that "courts of law can hold no middle course. The entire claim of each party must rest and be determined at law on the single point of the validity of the deed; but it is an ordinary case in this court that a deed, though not absolutely void, yet, if obtained under inequitable circumstances, should stand as security for the sum really due. In *How* v. *Weldon*, 2 Ves., 516, though there was actual fraud, *dolus in re ipsâ*, as the Master of the Rolls expresses it, the deed was allowed to stand as a security for the money paid." But in *Miller* v. *Tolleson*, Harper's So. Car. Eq. R., 145, it was determined that where the defendant was a participator in the fraud he should not be allowed to derive any advantage from the conveyance, and therefore, when it was made to secure a pre-existing debt, it should be set aside absolutely. In *McMeekin* v. *Edmonds*, 1 Hill's Ch., 288, in the same state, where a sheriff's sale of a tract of land to one who purchased at the instance of the debtor in the execution, and conveyed to a trustee for the debtor's family, was set aside, but the mother of the debtor's wife having advanced money towards the purchase and which went to the payment of his debts, and the trustee having afterwards paid out money in discharge of a mortgage to which the land was subject when sold, and neither of them having been accessory to the fraud, the court held that the money thus advanced should be refunded and that the land should stand as security for its payment. In *Anderson* v. *Fuller*, 1 McMullan's Eq., 27, where the grantee at the time of receiving the conveyance obligated himself to pay off a mortgage and judgment that were liens on the land conveyed, and afterwards did discharge those liens, the court held, in setting aside the deed, that the grantee was entitled to payment first out of the proceeds of the sale of the land (which was decreed to be sold for the payment of debts) for the sums which he had advanced in extinguishing those liens.

In the present case there was no error in the refusal of the Superior Court to allow the deed of Kellogg to stand as security for the debt due to the respondent Atwood, or for the money paid by him in satisfaction of the debt of $76.43.   For if the deed had been allowed to stand as such security it would have given to Atwood a preference over other creditors of Kellogg, to which, under the circumstances, he was not entitled.   The debt of $191.91 which was paid by Atwood stands upon different ground.   That was secured by attachment upon the real estate of Kellogg, and must have been paid in full out of his estate if Atwood had not paid it.   I think, therefore, that the court erred in refusing to allow Atwood to retain so much of the money received by him from the respondent Warriner as was necessary to pay that debt.

In respect to the seventh error assigned, it is sufficient to say that the respondent Atwood denied at the hearing before the committee that he had agreed with Kellogg to take a conveyance of his real estate, pay his debts, and take a mortgage for his security, giving five years for redemption.   But if that were not sufficient, it rested in the sound and reasonable discretion of the court to decree or refuse to decree a specific performance of the contract, if indeed there was a contract between the parties.   1 Story Eq. Jur., § 742.   And the discretion of the court was properly exercised.

I am therefore of opinion that the decree of the Superior Court should be so modified as to require the respondent Atwood to pay to the petitioner, as trustee aforesaid, within a reasonable time, only the sum of $633.09 with the interest thereon from and after the 8th day of March, 1879, instead of $825 with the interest thereon from that date; and that the decree in all other respects should be affirmed.

In this opinion the other judges concurred; except CAR-PENTER, J , who having tried the case in the court below, did not sit.