MARTHA TURNER, RESPONDENT, *v.* UTAH TITLE INSURANCE & TRUST COMPANY, DEFENDANT, FRANK KIMBALL, SPECIAL ADMINISTRATOR, INTERVENOR, APPELLANT.[1]

1. ASSIGNMENT.—FRAUD.—INCOMPETENT TESTIMONY.—VARIANCE.—CONSIDERATION.—In an action to recover on certain certificates of deposit issued by defendant to deceased, and alleged to have been assigned by deceased to plaintiff, when the complaint alleges and the assignment recites a consideration of $1,000 and the assignment is attacked as having been obtained by fraud and undue influence from deceased during her last illness and a short time before her death, testimony that deceased had said she intended to give plaintiff all her property when she died is incompetent and immaterial and brings about a variance between the proof and the pleadings as is an attempt to prove a different consideration from that stated in the assignment.

2. ID.—CONSIDERATION STATED.—IMPEACHMENT FOR FRAUD.—RULE.—The general rule that where no consideration is expressed

[1] Petition for a rehearing denied July 27, 1894.

in a deed an actual consideration may be proved, or where an actual consideration is expressed any other actual consideration, not wholly inconsistent, may be proved, is not applicable to a case where the consideration expressed is impeached on account of fraud, and when such is the case, the party claiming cannot prove a different consideration from that stated.

3. ID.—ID.—REVERSIBLE ERROR.—FINDINGS OF FACT.—Judgment for plaintiff in an action to recover on certificates of deposit alleged to have been assigned to plaintiff in consideration of the payment of $1,000 will be reversed, where the consideration is attacked for fraud and the court fails to find any consideration for the assignment.

4. ID.—ID.—MENTAL AND PHYSICAL CONDITION.—INEQUALITY OF TERMS.—UNDUE INFLUENCE PRESUMED.—When B., a short time before her death, executed an assignment to plaintiff transferring all her property, consisting of household goods, wearing apparel, jewels, certificates of deposit, money in bank, etc., aggregating over $12,000, and the consideration stated in the assignment was $1,000, but no money or other thing was given by plaintiff to deceased, who was at the time in a dying condition, bereft of sight and speech, with no attorney to counsel or advise or other person to represent her in the transaction, and who took no voluntary part in the formation of the assignment, but simply allowed her hand to involuntarily make the marks when guided by another, while plaintiff and S. dictated the terms of the assignment and enumerated the articles to be embraced therein. *Held*, that the assignment was void for want of consideration, that deceased was unfitted to attend to business of such importance as the disposition of her entire property for less than one-twelfth of its value and stood on no terms of equality with plaintiff, and that on account of her great mental weakness and the gross inadequacy of the consideration, imposition or undue influence would be presumed.

(No. 420.   Decided June 4, 1894.   37 P. R. 91).

APPEAL from the district court of the third judicial district, Hon. Chas. S. Zane, *Judge.*

Action by Martha Turner against the Utah Title Insur-

·ance & Trust Company to recover on certain certificates of deposit. Frank Kimball, special administrator of the estate of Minnie Barton, deceased, intervened, and from a judgment for plaintiff he appeals. *Reversed.*

The instrument on which this action was based and also the two cases following, is as follows:

"*Know all Men by these Presents:* That I, Minnie Barton, of Salt Lake City, Utah, for and in consideration of the sum of one thousand dollars, gold coin, to me in hand paid by Martha Turner, of Chicago, Illinois, the receipt whereof is hereby acknowledged, have sold, assigned and set over and by these presents, do sell, assign, transfer and set over unto said Martha Turner, all my right, title and interest of, in and to the following described personal property, to-wit:

"All the furniture, hangings, trimmings, carpets, pictures and frames, fixtures and utensils of every sort whatever, situate and being in, at No. 243 South Main street, in said City of Salt Lake, in the rear of South Main street, and opposite the Walker House; also the piano, groceries, provisions, wines, liquors, being in said houses, also all the jewelry I possess, consisting of a watch, chain, rings, earrings, brooch, star-shaped pendant, bracelets, wearing apparel, two seal-skin sacques.

"Also all moneys I have on deposit at the following named banks in Salt Lake City, Utah, and all accounts with said banks, to-wit: Union National bank of Salt Lake City, Wells, Fargo & Co.'s bank and the Utah Title Insurance & Trust Company. Also that certain leasehold interest to the property heretofore described as No. 243 South Main street. Also that certain insurance policy covering the within described property. To have and to hold.

" *In witness whereof,* · I have hereunto set my hand and seal this 20th day of February, 1892.

[SEAL]                                         her
                                  MINNIE  X  BARTON."
                                         mark

This action, with the two following, being based upon the above instrument, and involving the same questions, were tried together in the lower court, though not consolidated. The evidence was the same in each case. The same findings of facts and conclusions of law were made, but the judgments differed in amounts. The three cases were argued together in the supreme court upon one record, the briefs being the same in each.

*Mr. E. W. Tatlock* and *Mr. W. C. Hall*, for appellant.

In addition to the authorities cited in the opinion, appellant relied upon the following: *First*—On the question of the consideration stated in the contract. *Schermerhorn* v. *Vanderheyden,* 1 Johns. 139; *Emery* v. *Chase,* 5 Greenl. 232; *Howes* v. *Barker,* 3 Johns. 506; *Cutler* v. *Reynolds,* 8 B. Mon. 596; *Mitchell* v. *Williamson,* 6 Md. 210; *Maigley* v. *Hauer,* 7 Johns. 341; *Winchell* v. *Latham,* 6 Cowen, 690; *Golpeck* v. *Blake,* 19 Ia. 267; 2 Pom. Eq. Jur. 434, notes. *Second*—On account of the physical and mental condition of Minnie Barton, was there really any contract between her and the plaintiff? *Howell* v. *McCrie,* 36 Kan. 644; *Marsh* v. *Tyrrell,* 2 Flag. 122; *Delafield* v. *Parish,* 25 N. Y. 23; *Tyler* v. *Gardiner,* 35 N. Y. 595; *Boyd* v. *Boyd,* 16 E. P. Smith, 283, 295; *Case* v. *Case,* 26 Mich. 484; *Brady's Appeal,* 16 E. P. Smith, 277, 14 Ves. 299; *Newhouse* v. *Gardiner,* 17 Barb. 236; *Harvey* v. *Sullens,* 46 Mo. 147; *Lake* v. *Ramsey,* 33 Barb. 49; *Picket* v. *Loggan,* 14 Ves. 214; *Parsell* v. *Macnamara,* 14 Ves. 91; *Dunn* v. *Chambers,* 4 Barb. 376; 1 W. & T.'s Leading Cases in Equity, 825; *Butler* v. *Hasket,* 4 Dess.

625; *Phillipson* v. *Kerry,* 32 Beavan, 628; Russell's Appeal, 25 E. P. Smith, 269; *Canant* v. *Jackson,* 16 Ves. 335; *Todd* v. *Grove,* 33 Mar. 183; *Muller* v. *Buyck,* 12 Mon. 354; *Howell* v. *Ransom,* 11 Barb. 546; 2 Pom. Eq. Jur. §§ 926–7, 947, 951–5.   *Third*—There are no findings of fact to support the conclusion of law that there was a valuable consideration for the assignment.   *Masters* v. *Lash,* 61 Cal. 623.   *Fourth*—The court erred in giving judgment against the intervenor for interest; the funds being in the custody of the court by consent of parties awaiting final action, neither party can recover interest against the other. Session Laws 1890, ch. 23; *Washington* v. *Harmon,* 147 U. S. 584.   *Fifth*—The court erred in entering judgment for costs against the intervenor.   2 Comp. Laws 1888, § 3693.

*Mr. Samuel McDowall,* for respondent.

Cited *First*—On signatures by mark and delivery of instrument.   *Harris* v. *Harris,* 59 Cal. 620; 2 Comp. Laws 1888, § 4371, subd. 8; 2 Wharton on Ev. (2 ed.) § 889; *Basket* v. *Hassell,* 107 U. S. 602; *Rothrock* v. *Rothrock,* 30 P. R. 453.   *Second*—Undue influence.   Any degree of influence over another acquired by kindness and attention never constitutes undue influence within the meaning of the law.   1 Redfield on Wills, 522; *In re* Carrol's Will, 50 Wis. 437 (7 N. W. R. 434); Sack. Inst. to Jur. 603; *Conley* v. *Nailor,* 118 U. S. 127; Woernor on Adm. § 31.   Mere advice or persuasion is not undue influence.   *Webster* v. *Sullivan,* 58 Ia. 260 (12 N. W. R. 319).   Undue influence means influence destroying free agency.   Woernor, *supra; Barnes* v. *Barnes,* 66 Me. 285; *Mitchell* v. *Mitchell,* 44 N. W. R. 85; *Goodwin* v. *Goodwin,* 59 Cal. 561; 1 Jar. Wills, Perkins' notes, 41; 2 Pom. Eq. Jur. § 943; *Baldwin* v. *Dunton,* 40 Ill. 188; Sackett's Ins. Jur. 146.   *Third*—

Fraud is never presumed but must be affirmatively proven. *Schroeder* v. *Walsh,* 120 Ill. 410; Sackett, 232; Woernor on Adm. 116; *Vandor* v. *Roach,* 15 P. R. 354. *Fourth*—The testimony introduced to prove a different consideration from that stated in the assignment was competent. *Peck* v. *Vandenberg,* 30 Cal. 57; *Bennett* v. *Solomon,* 6 Cal. 135; *McCrea* v. *Purmont,* 16 Wend. 460; *Ballard* v. *Briggs,* 7 Pick. 537; *Hinds* v. *Langsmith,* 11 Wheat. 199; *Coles* v. *Soulsby,* 21 Cal. 50; *Flecheiner* v. *Trounstine,* 24 P. R. 883; *Pique* v. *Arendale,* 71 Ala. 91; *Brown* v. *Sumner,* 91 Ind. 151; *Goodspeed* v. *Fuller,* 46 Me. 147; *Saunderson* v. *Broadwell,* 23 P. R. 36; *Stone* v. *Pennock,* 31 Mo. App. 544; Clark's App. 57 Conn. 565; *Hall* v. *Smith,* 8 How Pr. 281; *Gary* v. *Aid Assn.,* 53 N. W. R. 1086; *Barnett* v. *Ellis,* 52 N. W. R. 368. *Fifth*—Prior declarations. The evidence regarding prior declarations of deceased was competent. Wharton on Evidence (2 ed), § 1011–1012; *Coulam* v. *Doull,* 4 Utah, 276; *Potter* v. *Baldwin,* 133 Mass. 427: Woernor on Adm's. 490. Where a case is tried by the court without a jury, and there is sufficient competent evidence to justify the findings and judgment, the case will not be reversed on account of the admission of incompetent testimony. *Victoria Copper Mining Co.* v. *Haws,* 7 Utah, 515. *Sixth*—The court did not err in failing to find that there was valuable consideration for the assignment. The finding, if made, would have been adverse to appellant. *Hutchings* v. *Castle,* 48 Cal. 156; *Schroeder* v. *Johns,* 27 Cal, 282; *McCourtney* v. *Fortune,* 57 Cal. 617. This fact is found among the conclusions of law and is a good finding of fact: Hayne on New Trial, § 242; *De-Martin* v. *DeMartin,* 24 P. R. 595; *Monterey County* v. *Cushing,* 23 P. R. 700; *Stephenson's Adms.* v. *King,* 81 Ky. 433. *Seventh*—The assignment is a good bill of sale and the delivery of the personal property was complete. Benj. on Sales, 651, 657, 659; *Philbrook* v. *Eaton,* 134 Mass. 400;

*Ridden* v. *Thrall*, 125 N. Y. 572; *Stephenson's Adms.* v. *King, supra; Kingham* v. *Perkins,* 105 Mass. 111; *Pierce* v. *Bank,* 129 Mass. 425; *Taft* v. *Bowker,* 132 Mass. 277. *Eighth*—The delivery of the property to plaintiff under the circumstances was good as *donatio mortis causa.* Stephenson's *Adms.* v. *King, supra; Ellis* v. *Secor,* 31 Mich. 185; *McCarty* v. *Kernan,* 81 Ill. 291; *Basket* v. *Hassell,* 107 U. S. 614; *Crook* v. *Bank,* 52 N. W. R. 1138; Thornton on Gifts, 227, 473. *In re* Mondorf's Will, 256, 18 N. E. R.; 2 Woernor on Adms. 1144–47.

MERRITT, C. J.:

This action was brought by Martha Turner, respondent, to recover from defendant the sum of $2,500 upon three certificates of deposit issued by defendant to Minnie Barton, bearing date September 9, 1891,—two for $1,000 each, the other for $500, all bearing interest from date at 5 per cent. per annum, and payable to the order of said Barton six months after date; also another certificate of deposit between the same parties for $500, dated October 19, 1891, with like interest, payable three months from date; also another certificate of deposit between the same parties for $1,000, dated November 16, 1891, with like interest, payable six months after date; and also for a balance of $36.67, upon deposit with defendant to the credit of said Barton. The respondent bases her right of recovery upon an assignment which she claims was made to her by Minnie Barton, February 20, 1892. The consideration expressed in the assignment is $1,000, United States gold coin, in hand paid by Martha Turner to Minnie Barton, for which it is stated in the assignment, and claimed by the respondent, Minnie Barton sold, assigned, and transferred to respondent, not only the said certificates of deposit, and deposit of credit, but $2,500 cash on deposit with the Union National Bank, and $3,350 on deposit with Wells, Fargo &

Co. to the credit of said Barton, and also all her household goods, etc., which were afterwards sold by respondent for $2,500. The defendant answered the plaintiff's and intervenor's complaints, and by cross complaint set up the adverse claims of plaintiff and intervenor, to the subject-matter of this action, and upon hearing of the cross complaint, taken as confessed by the plaintiff and intervenor, on the 25th day of June, 1892, it was ordered, adjudged, and decreed by the court below that the defendant pay into court the sum of $4,170, being the full amount due upon the certificates of deposit and on the open account, and to be held by the clerk to await the final determination of the action as to the ownership thereof.

Minnie Barton died intestate on said 20th of February, within one hour and a half after it is claimed she executed the assignment. On the 6th day of May, 1892, Clarence W. Hall was appointed special administrator of the estate of said deceased, and on that day qualified as such, and on the 20th day of April, 1893, by order and leave of court, filed his amended complaint of intervention, alleging, among other things, the death, intestacy of the deceased, and that she left estate situated in the city and county of Salt Lake, Utah T., consisting of said certificates of deposit and said deposit of cash with the defendant; also the cash on deposit with Wells, Fargo & Co., and the Union National Bank, and the household goods, etc.; and that defendants said Wells, Fargo & Co. and the Union National Bank were then doing a banking business in Salt Lake City. He claims title and possession of this property, and attacks the validity of, and as grounds for canceling this assignment alleges that, at the date of the alleged execution of the assignment, the deceased was seriously and dangerously sick, greatly prostrated in body, and weak in mind, could scarcely see, and could not speak, and could only sign by a mark, and died within an hour

and a half after she had so signed the assignment, and
that she had no attorney or other person present repre-
senting her in the transaction, and that she was not at
the time able or competent to make a binding or valid
contract (that is, from her physical and mental condition,
she was incapable of understanding the nature and effect
of the transaction), and that the assignment was obtained
by solicitation, fraud, and undue influence of the plaintiff,
and that the assignment was without any consideration
whatever, and therefore void, and of no binding force or
effect. These allegations of the intervenor were contro-
verted by the plaintiff, and, to the contrary, she averred
that the deceased was of sound mind and understanding,
and that for a good and valuable consideration—among
other things, for services before then rendered by plaintiff
to the deceased in taking care of, nursing, and maintain-
ing her — the deceased, by assignment, sold, assigned,
transferred, and delivered to plaintiff all of the aforesaid
money and property. The court below found for plaintiff
(respondent here), whereupon the intervenor appealed to
this court. In the meantime, the intervenor Hall having
died, the present intervenor, Kimball, having been appointed
administrator in his place, was substituted as intervenor,
and as such prosecutes this appeal.

The question for determination is whether the deceased,
at the time she executed the assignment in question, pos-
sessed sufficient intelligence to understand fully the nature
and effect of the transaction; or if, in fact, the assignment
was ever made, and, if so, whether the assignment was
executed under such circumstances as that it ought to be
upheld, or as would justify the interference of equity for
its cancellation. *Allore* v. *Jewell,* 94 U. S. 508. The
plaintiff must recover, if at all, upon the assignment.
From a careful examination of the testimony it must be
admitted that the deceased, at the time it is claimed she

executed the assignment, was and had been suffering for a long time from, and greatly prostrated with, her last sickness, viz. syphilitic degeneration of the kidneys, which frequently produces, and is one of the most common causes of, brain trouble. Her face was very thin, her eyes much sunken, and she was unable to converse. Could only respond by a nod or shake of the head, or at most with a faint whispered "Yes" or "No." Was totally blind in one eye, and so much so in the other that she could not see to read or write. To within a month of her death she could only recognize her acquaintances when they came up close by her, and her vision would be improved a little with a very strong glass, but not used during the last six weeks of her illness. She was in bed, dying of exhaustion, near the point of death, and bereft of speech or sight, the usual methods of communication. Great haste was manifested by those around the deceased, especially the plaintiff and the witness Helen Smith, to complete the affair before death should end it.

It sufficiently appears from the evidence that the deceased was educated, and, when in health, a woman of fair business capacity. Also that the plaintiff and Helen Smith were crafty, avaricious, and selfish, and that no one was present at the time to counsel or advise with, or did counsel or advise, the deceased as to her rights, or act for her in the transaction. That she took no voluntary part whatever in the formation of the assignment is beyond question. She simply allowed her hand to involuntarily make the marks when guided by another person. The attorney who drew the assignment testified that a messenger informed him that his services were needed at the house of deceased to draw her will. Before leaving his office he drew the formal parts of a will, and arrived at her house about 3 o'clock P. M. He was met at the door by Helen Smith, who took principal charge of and informed him that they

did not wish a will; that they wanted a bill of sale, or something of that sort, to turn over everything that "Minnie" had to Martha Turner.  She gave the instructions in general to the attorney, with an occasional direction to him from Martha Turner, who enumerated some of the articles to be embraced in the assignment.  From these the attorney, without ever having seen the deceased, drew up the assignment, placing the consideration, as directed by them, at $1,000 gold coin in cash, paid the deceased by Martha Turner; and at about 4 o'clock P. M. he was hurriedly ushered for the first time into the presence of the deceased. The attorney also testified that they desired him to come into the bedroom of Minnie Barton quickly; that she was liable to die at any moment; that the attending physician was present; that they were ready for "Minnie" to execute the assignment.  The attorney read the instrument twice to the deceased, and thought, though he was not positive, that she nodded her head in assent.  Then she was propped up in bed.  He placed the instrument before her, gave her the pen, placed it within her fingers, and guided her hand in making the marks.

At this time certain other assignments were written in the bank pass books of the deceased for her to sign, if she should recover from the exhaustion of this effort.  She did not rally, but continued to sink, and shortly thereafter died.  The attorney further testified that, irrespective of the signing, the deceased took no voluntary action, and gave no direction or instruction whatever in the transaction.  Helen Smith testified that she had no authority from, nor did the deceased give her any instructions whatever; that the part she took, and the instructions and directions she gave to the attorney, were voluntary on her part; and without authority from the deceased, and were simply based upon previous conversations, which she claimed to have had with the deceased about a year pre-

vious, as to what she intended to do with her property
when she died. The intervenor objected to this and like
declarations, assigning the following errors: "The court
erred in permitting the witness Jennie Burke to answer
the following question: 'State whether or not you ever
heard Miss Barton, the deceased, say anything in reference
to the disposition of her property,'—against the objection
and exception of the intervenor that the question was
leading, incompetent, hearsay, and immaterial; and also in
permitting said witness to testify as to what the deceased
had said to her in reference to giving her property to the
plaintiff, as also being hearsay, incompetent, and imma-
terial, and against the objection and exceptions of the
intervenor." And that, second: "The court erred in
admitting the evidence of Martha Turner, the plaintiff,
and also the evidence of the witnesses Helen Smith,
Jennie Burke, and A. Alexander, as to the statements
alleged by them to have been made to each of them res-
pectively by Minnie Barton, as to what disposition she
intended to make of her property in the case of her death;
or that she said to them respectively that if anything
happened to her she wanted all of her property to go to
Martha Turner; that at her death she intended to give
her property to Martha Turner—against the objection and
exception of the intervenor; that said evidence was irrele-
vant and immaterial, and also being an attempt to prove
a consideration for the alleged assignment different from
that stated in the assignment and in plaintiff's complaint."

These objections should have been sustained. It was
error to admit such testimony, because it was irrelevant
and immaterial, and brought about a variance between the
proof and pleadings, and was an attempted proof of a
different consideration than that stated in the assignment
or alleged in the pleadings. In general, where no con-
sideration at all is expressed in a deed, a party may prove

the actual consideration to support it. And where a consideration is expressed a party may prove any other actual consideration, if not wholly inconsistent with that stated. To this general rule there is the limitation that, where the consideration expressed in a deed is impeached on account of fraud, the party claiming under the conveyance cannot sustain it by proving another consideration different from that stated. If a pecuniary consideration is stated in the deed, and it is impeached, the party cannot rely on the consideration of blood, love, or affection. Kerr, Fraud & M. pp. 191, 192; *Hartopp* v. *Hartopp*, 17 Ves. 184–192, *Clarkson* v. *Hanway*, 2 P. Wms. 203; *Willan* v. *Willan*; 2 Dow. 274; cases cited, notes, pp. 433, 434, 2 Pom. Eq. Jur. The intervenor excepted to the findings of fact as a whole, and to each of them separately, as being contrary to and not supported by the evidence, and because they did not contain, and the court failed to find, whether there was in fact a consideration for the assignment, and made the same objections and assignment of errors to the findings of fact in the first and second assignment of errors.

The failure of the court below to find as to the fact of the consideration for the assignment was reversible error. *Marsters* v. *Lash*, 61 Cal. 623. No money or any other thing was given by plaintiff to the deceased. The board and lodging given by plaintiff to deceased was a gratuity; therefore the assignment was without a consideration, and of no binding force or effect whatever. *Scully* v. *Scully's Ex'r*, 28 Iowa, 550; *Allen* v. *Bryson*, 67 Iowa, 596, 25 N. W. 820. And, again, in view of the circumstances stated, should there have been the consideration claimed and attempted to have been proven by respondent, we are not satisfied that the deceased was, at the time she executed the assignment, capable of comprehending fully the nature and effect of the transaction. She was in a state of ex-

treme mental and physical weakness, sick, dying, at the point of death, bereft of speech and sight. If not disqualified, she was unfitted to attend to business of such importance as the disposition of her entire property, of the value of not less than $12,335, for the insignificant sum of $1,000, or for the board or lodging of deceased, as claimed by respondent. Certain it is that in negotiating for the disposition of the property she stood on no terms of equality with the plaintiff, the deceased being alone, with no attorney or other person representing her in making the assignment. It is not necessary, in order to secure the aid of equity, to prove that the deceased was at the time insane, or in such a state of mental imbecility as to render her entirely incapable of executing a valid deed. It is sufficient to show that from her sickness and infirmities she was at the time in a condition of great mental weakness, and that there was gross inadequacy of consideration for the conveyance. From these circumstances imposition or undue influence will be inferred. *Allore* v. *Jewell*, 94 U. S. 510, 511; *Harding* v. *Handy*, 11 Wheat. 125; *Kempson* v. *Ashbee*, 10 Ch. App. 15.

In the case of *Harding* v. *Wheaton*, 2 Mason, 378, Fed. Cas. No. 6,051, a conveyance executed by one to his son-in-law for a nominal consideration, and upon a verbal arrangement that it should be considered as a trust for the maintenance of the grantor, and after his death for the benefit of his heirs, was, after his death, set aside, except as security for actual advances and charges, upon application of his heirs, on the ground that it was obtained from him when his mind was enfeebled by age and other causes. Mr. Justice Story, in deciding the case, said: "Extreme weakness will raise almost necessary presumption of imposition, even when it stops short of legal incapacity." In the case of *Allore* v. *Jewell*, 94 U. S. 511, Mr. Justice Field, in delivering the opinion, said: "The same doctrine

is announced in adjudged cases almost without number, and it may be stated as settled law that whenever there is great weakness of mind in a person executing a conveyance of property, arising from age, sickness, or any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, a court of equity will, upon proper and seasonable application of the injured party, or his representatives, or heirs, interfere, and set the conveyance aside." And the present case comes directly within this principle. Judgment and decree reversed, and cause remanded, with instructions to the court below to enter a judgment and decree in favor of the intervenor, canceling the assignment, delivering the same and the certificates of deposit to the intervenor, and a direction to the clerk of the court to pay over the money in his hands as the custodian of the court to the intervenor.

MINER and SMITH, JJ., concur.

BARTCH, J., concurs in the conclusion reached.