## FIRST NAT. BANK OF ANADARKO v. ORME.

No. 17169.    Opinion Filed Dec. 7, 1926.

Rehearing Denied June 7, 1927.

**1. Appeal and Error—Review and Disposition of Equity Cause.**

In an equitable cause of action, on appeal to this court, it is incumbent upon the Supreme Court to examine the whole record. and this court may affirm the judgment of the trial court ' or reverse the same and render such judgment as should have been rendered.

**2. Appeal and Error—Necessity for Motion for New Trial—Action in Overruling Demurrer to Petition.**

The action of the trial court in overruling a demurrer to a petition where the defendant has pleaded further will not be reviewed by this court unless it is presented to the trial court in a motion for a new trial. Van Zant et al v. Reed et al., 109 Okla. 88, 234 Pac. 623.

**3. Mortgages—Cancellation for Lack of Mental Capacity in Mortgagor.**

· Whenever there is a great weakness of mind in a person executing a conveyance of land, arising from age, sickness, or other cause, and the mind of the party executing the conveyance has ceased to be a safe guide to her actions, it is against conscience for one who has obtained the conveyance to derive any advantage. from such conveyance, and it is a peculiar province of a court of conscience to set such a conveyance aside. That a court of equity will interpose in such a case, is among its best settled principles.

**4. Same—Judgment Canceling Mortgage and Note Sustained.**

· Record examined, and held, the same fully and clearly sustains the judgment of the trial court in finding the plaintiff was of unsound mind at the time of the execution of the mortgage and note, sought to be canceled.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Caddo County ;· Will Linn, Judge.

Action by W. P. Orme, otherwise known as Willie Pearl Orme, against the First National Bank of Anadarko to cancel a certain note and morgage. Judgment 'for plaintiff, and defendant appeals. Affirmed.

Bailey & Hammerly, Prewett & Wamsley, Lydick & McPherren, and Kittie C. Sturdevant, for plaintiff in error.

Morris, Johnson & Wilhite, for defendant in error.

Opinion by RUTH, C. While Pearl Orme, hereinafter designated as plaintiff, brought her action against the First National Bank of Anadarko, hereinafter called defendant, wherein the plaintiff seeks to have canceled a certain note and mortgage, said. mortgage covering her homestead allotment, and to have her title to the lands quieted, and plaintiff alleges that, if she ever executed the note and mortgage, she has no knowledge of her act, as at the time the same purports to have been signed she was of unsound mind and wholly incapable of using discretion in the transaction of her business affairs, and incapable of entering into a binding contract. Plaintiff further alleges fraud in that defendant took advantage of her weakened mental and physical condition and procured her signature to the instruments.

Plaintiff further alleges want of consideration and that defendant secured her signature to the note and mortgage on November 19, 1923, but withheld it from record until June 13, 1924, and defendant afterwards released the mortgage of record, and thereafter, on August 19, 1924, refiled the same and caused the same to be recorded in the office of the county clerk of Caddo county.

To the petition defendant filed its demurrer for that there is a defect of parties plaintiff. Upon the overruling of the demurrer, the defendant excepted, and thereafter filed its answer admitting it was a banking corporation and was the owner and holder of the note and mortgage, otherwise denying generally.

The cause was tried to the court and judgment rendered for plaintiff, and defendant appealed and presents this case for review upon petition in error and case-made.

The first proposition presented is that this is an equitable cause of action and it is incumbent upon this court to examine the whole record, and if the judgment of the trial court is clearly against the weight of the evidence. this court shall render such judgment as should have been rendered.

With this we are in perfect accord and it is useless to cite authorities.

The next proposition presented is that the plaintiff's husband, O. R. Orme, is a necessary party plaintiff, and the trial court erred in overruling the demurrer of defendant to the plaintiff's potition, citing sections 218, 220, 224, and 268, C. O. S. 1921, providing, in substance, that all parties having an interest in the subject-matter of the action and in obtaining the relief sought may be joined as plaintiffs, but if they refuse to join as plaintiff they may be made parties defendant, and that the court may determine any controversies between the parties before it, when it can be done without prejudice to the rights of others, or by saving their rights, but when a determination of the controversy cannot be had without the presence of other parties, the court must order them brought in and a defendant may demur to the petition when it appears from the face thereof that there is a defect of parties plaintiff.

It appears from the record the demurrer was overruled February 2, 1925, and defendant elected to take 20 days to answer, and the petition in error was filed in this court February 4, 1926. In defendant's motion for a new trial the question of the alleged error of the court in overruling the demurrer is not presented, and this court has held:

"The action of the trial court in overruling a demurrer to a petition, where the defendant has pleaded further, will not be reviewed by this court unless it is presented to the trial court in a motion for a new trial." Commercial Investment Trust v. Ferguson, 96 Okla. 162, 220 Pac. 925; Van Zant et al. v. Reed et al., 109 Okla. 88, 234 Pac. 623.

We have examined the very able opinion of this court, delivered by Mr. Justice Harrison in Simon v. Hine, 78 Okla. 224, 190 Pac. 264, cited by plaintiff in error, but find it is not in point, as in the cited case a reformation of a deed was prayed and the court could not substitute one instrument for another without having before it all parties signing the original instrument, but no such condition obtains in the instant case.

The third proposition argued by defendant is the question of fraud in procuring the signature of plaintiff, and this is so interwoven with the fourth and fifth propositions, to wit, that plaintiff was of unsound mind, and want of consideration, that they will be considered together.

The record discloses plaintiff, with her husband and four children, were living on plaintiff's homestead allotment in Caddo county. In June, 1923, she was delivered of a child, and afterwards became ill with what the physicians described as "septic multiple neuritis." On September 22, 1923, she was brought to Dr. Postelle's sanitarium in Oklahoma City, where she remained until October 13, 1923. Dr. Postelle testified plaintiff had delusions and hallucinations, that when she heard children's voices coming from the street, she would want to get out of bed and go to them, declaring they were her children, notwithstanding her children were at home more than 70 miles from the sanitarium. In response to a question as to whether her mental condition was such that she could concentrate so as to be able to transact business in an intelligent way, Dr. Postelle answered, "Well, for the first week or two or three she was here, **absolutely no.**" After three weeks at Dr. Postelle's, plaintiff was conveyed to a private residence in a section of Oklahoma City known as Capitol Hill, where she remained for a few days, and then transported to Dr. Hyroop's sanitarium in Oklahoma City, where she remained until November 5, 1923. Dr. Hyroop testified she entered his sanitarium with paralysis in both limbs, paralysis condition of the hips; that her state of mind was about that of a child 8 or 9 years of age; she could not remember anything; that they wou'd give her a dinner and in a few minutes thereafter she would declare she had no dinner and would want another dinner; that she would object to taking treatment and after they would treat her against her will, she would declare they had not given her treatment and demand another treatment. She would ask for stationery, saying she wanted to write a "big" letter, and after obtaining the stationery, would write perhaps one word and throw the paper away and lie with the pencil in her mouth staring into vacancy; sometimes she would answer intelligently and at other times, when a question was asked, she would just lie there and stare at him. These were daily occurrences. On November 5, 1923, they took plaintiff on a stretcher, put her in a baggage car and transported her to Anadarko and took her to the home of her father-in-law and mother-in-law. Plaintiff was hysterical and cried for her baby, but when they brought it to her she renounced it, declared they had taken her baby and substituted another. After several days and several presentations of the baby, she was finally convinced it was her baby. Defendant argues that a young baby changes so rapidly in ap-

pearance that she could not recognize it, but this argument is not convincing. Mother's love is the strongest emotion of which the human heart or soul is capable. Mother's intuition is unerring when her baby is concerned, and we know of no stronger proof of a disordered mind than the repudiation of a baby by a mother who has only been absent from it for a period of six weeks, after having it at her side for three months previous thereto, and who during the separation was constantly crying for her baby.

During her stay at her mother-in-law's, Dr. Curley called on her, as he had attended her in childbirth. He appeared as a witness for defendant, but testified he treated plaintiff from the time she was delivered of the child in June until she was taken to Dr. Postelle's sanitarium in September, and during the greater part of that time she was delirious, but after she was brought back to Anadarko in November her condition appeared to have improved, and although she suffered intense pain and was helpless and had little use of her arms and hands, he thinks her mental condition was such that she knew what she was doing when she signed the note and mortgage.

Dr. Curley's last visit to plaintiff was on November 15th, and on November 16th Mr. McClure, from the defendant bank, appeared with the note and mortgage; plaintiff was raised up in her bed, a book placed in her lap, the note and mortgage spread thereon; she was handed a pen and signed her name "W. P. Orme", and she testifies that while she has no recollection of signing, she may have done so but she never signed her name that way before, but always as "Pearl Orme."

On the same day, and immediately after getting her name attached to the note and mortgage, plaintiff was placed on a cot, put in the baggage car, and brought to the sanitarium in Oklahoma City, but how long she remained there the record does not disclose.

Dr. Campbell, of Anadarko, attended plaintiff every day and some times twice each day from November 5th to November 15th, and describes her condition as partial paralysis, highly nervous, crying all the time, intense pains, could not concentrate, that while she might know she was signing a note and mortgage, she was in no condition to attend to anything of that character during the period he attended her, and her mind was in such a condition she would probably do anything she was told to do. Dr. Campbell saw her on the 15th day of November,

and they had the note and mortgage signed on the 16th and immediately removed her on a stretcher to the sanitarium.

Dr. Eden treated plaintiff during the summer of 1923 up until sometime in August, and describes her mental condition during that period as very bad indeed. Mr. Dietrich, father of plaintiff, was with her all the time she was in Oklahoma City from September 26th until early in November. He describes her actions as described by Drs. Postelle and Hyroop. Plaintiff could not remember anything five minutes at a time; was hysterical; always crying; wanted her baby, and declared if they did not get the baby she would go get it herself, notwithstanding she was unable to turn over in bed without assistance. Witness said he would get the baby and left for Anadarko, but he had no sooner reached home than he was advised her husband was bringing her home, and he met the train at El Reno and rode home in the baggage car with her, and the signing of the mortgage followed and she was hurried back to the sanitarium. Mrs. Dietrich, mother of the plaintiff, testified as to her daughter's condition both before going to the sanitarium and after returning in November, much the same as the five doctors described it, and testifies as to the plaintiff crying for her baby and her repudiation of it for several days.

Defendant stresses the fact that in July or August, 1924, eight or nine months after she signed the note and mortgage, plaintiff was able to discuss the matter of obtaining a loan from the school land department of this state. This evidence does not in any manner tend to prove her mental condition in November, 1923, and the fact that when the check arrived from the school land department, and she discovered it was made out to herself and the defendant bank jointly, she repudiated the transaction, and if this proves anything, it proves plaintiff had no knowledge of the execution of the note and mortgage to defendant, and under all the evidence, we think there was sufficient evidence to sustain the judgment of the court finding plaintiff of unsound mind at the time she signed the note and mortgage, and the whole transaction was the consummation of a plan to get plaintiff out of the sanitarium long enough to give the appearance that she was sufficiently recovered to know what she was doing when she signed the note and mortgage, and then hurry plaintiff back to a sanitarium.

We are fully appreciative of the fact that "there is a legal presumption of sanity in regard to every man, and proof of insanity

at one time carries no presumption of its past existence." (Combs v. Lairmore, 106 Okla. 48, 233 Pac. 231, and cases cited) ; but we are of opinion this presumption has been rebutted in the instant case, and find on error in the judgment of the court finding plaintiff of unsound mind at the time of the execution of the instruments sought to be canceled.

In Miller v. Folsom, 49 Okla. 74; 149 Pac. 1185, this court said:

"The test of capacity to make a deed is that the grantor shall have the ability to understand the nature and effect of the act in which he was engaged and the business he is transacting. To invalidate a deed it must appear that the grantor was incapable of comprehending that the effect of the deed, when made, executed and delivered would be to divest him of the title to the land set forth in the deed." See, also, Harris et al. v. International Land Co., 89 Okla. 163, 213 Pac. 845 ; Charley v. Norvell et al., 97 Okla. 114, 221 Pac. 255 ; Mullen v. First Guaranty Bank, 113 Okla. 84, 239 Pac. 161.

This court, in Miller v. Folsom, supra, quotes with approval Jones v. Thompson, 5 Del. Ch. 374, and Doe. D. Guest v. Beeson, 2 Del. (Houst,) 246, where, we are of opinion, the true rule was announced in the following charge:

"If from age, or disease, or the visitation of providence, or from any other cause, no matter what, his mind was so unsound as to render him incapable of comprehending and understanding the nature and character of the act he was doing, and the consequences in respect to himself and the estate, * * * if consummated, would be to divest his estate and interest in the land, then we say to you that he was of unsound mind, according to the legal significance of these terms, and the deed would be void on this ground."

We are of opinion that in the instant case the requirements of the tests to be applied have been fully met.

On the question raised with reference to want of consideration for the execution of the note and mortgage, we are of opinion the evidence introduced by defendant was sufficient to sustain the allegations of plaintiff's petition. It appears from the record that Grover C. Wamsley, whose name appears as one of counsel on the brief, was vice president and acting president of defendant bank at the time of the execution of the note and mortgage, and he testified that Orris Orme, husband of plaintiff, was indebted to the bank in approximately the sum of $3,500. (It would appear Orris Orme and one Pollard had been associated in dealing in cattle.) Witness testified they further loaned Orris Orme $1,800 in July or August 1923, "to pay doctors' bills, and expenses." As plaintiff was at home from June 12, 1923, when the child was born, until September 22, 1923, and attended only by a local physician, it must have been evident that no such expense had been incurred, and witness further testified he let the husband have the money, "and he (the husband) was to get the note and mortgage executed as soon as she (the plaintiff) got back from Oklahoma City." The record shows plaintiff did not go to the Oklahoma City sanitarium until September 22, 1923, so the loan must have been made in anticipation of plaintiff going to the sanitarium.

The $3,500 due the defendant from the husband, plus the $1,800 loaned in July or August, would bring the total to $5,300, notwithstanding which the note and mortgage was for the sum of $6,500, and defendant explained this by testifying that the bank had considered the matter and decided that the bank could extend credit to the husband to the extent of $6,500 provided he obtained this note and mortgage executed by plaintiff, thus leaving the husband with a future credit or drawing account of $1,200.

The husband's indebtedness had been incurred prior to the execution of the note and mortgage and there is nothing in the record to indicate any part of it was spent in her behalf, and in addition we are confronted with the fact that plaintiff was of unsound mind and incapable of comprehending what the effect of the execution and delivery of the note and mortgage would be upon her land, which fact of itself was sufficient to invalidate the instruments, but we have further reviewed the testimony submitted as to the consideration for their execution as herein set forth, as we are of opinion that this case falls squarely within the rule announced by this court in Paulter v. Manuel et al., 25 Okla. 68, 108 Pac. 753, wherein the court cites with approval the language of Mr. Chief Justice Marshall in Harding v. Handy, 11 Wheat. (U. S.) 103, 6 L. Ed. 429, where it is said:

"If these deeds were obtained by the exercise of undue influence over a man whose mind had ceased to be a safe guide of his action, it is against conscience for him who has obtained them to derive any advantage from them. It is the peculiar province of a court of conscience to set them aside. That a court of equity will interpose, in such case, is among its best settled principles."

This court further quotes with approval

Harding et al. v. Wheaton, 2 Mason, 378, Fed. Cas. 6051, where Mr. Justice Story said:

"Extreme weakness will raise an almost necessary presumption of imposition, even when it stops short of legal incapacity."

And this court further quotes with approval Eli Allore v. Marshall Jewell, 94 U. S. 506, 24 L. Ed. 260, wherein Mr. Justice Field, after quoting the language of Mr. Chief Justice Marshall and Mr. Justice Story, said:

"The same doctrine is announced in adjudged cases, almost without number; and it may be stated as settled law that, whenever there is a great weakness of mind in a person executing a conveyance of land, arising from age, sickness, or any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, a court of equity will, upon proper and seasonable application of the injured party, or his representatives or heirs, interfere and set the conveyance aside."

See Jones v. McGruder, 87 Va. 360, 12 S. E. 792; Fishburn v. Ferguson Heirs, 84 Va. 87, 4 S. E. 575; Turner v. Utah Title Insurance & Trust Co., 10 Utah, 61, 37 Pac. 91; Taylor v. Atwood, 47 Conn. 498; Ashmead et al. v. Reynolds et al., 134 Ind. 139, 33 N. E. 763; Ikerd et al. v. Beavers, 106 Ind. 483, 7 N. E. 326; Wilkie, Gdn., v. Sassen, 123 Iowa, 421, 99 N. W. 124; Clark v. Lopez, 75 Miss. 932, 23 So. 648-957; Richards v. Donner, 72 Cal. 207, 13 Pac. 584; Walling v. Thomas et al., 133 Ala. 426, 31 So. 982.

Having carefully examined the record and finding the judgment of the trial court is not against the clear weight of the evidence, the judgment is in all matters affirmed.

By the Court: It is so ordered.