## CONWILL v. ELDRIDGE.

No. 1981.   Opinion Filed March 11, 1913.

(130 Pac. 912.)

1.   **TRIAL — Time of Trial—Right to Delay—Waiver—Continuance.**
By reason of section 5834, Comp. Laws 1909, where the issues in
a case are made up during a term of court, the case is not triable
at said term earlier than ten days after the date the issues are
made up; and it is error for the court to compel a party, over
his objection upon this ground, to proceed to trial of the case
on an earlier date.   But where no objection is made that the case
is improperly set for trial, and party moves for a continuance
of the cause upon the ground only that a witness who had
promised him to be present was absent, he will be held to have
waived any objection to the case having been prematurely set
for trial.

2.   **EVIDENCE — Opinion — Nonexperts — Sanity.**   Where nonexpert
witnesses testify that they have observed the conduct of a per-
son whose sanity is in question, and state the facts which they
observed and upon which they base their opinions, they may give
their opinions as to the sanity of such person.

3.   **APPEAL AND ERROR—Review—Verdict—Insufficient Evidence.**
Where there is lacking any evidence reasonably tending to sup-
port any essential issue that was or must have been found in
favor of the prevailing party in order to return a general verdict
for him, or to support any special finding of fact in his favor
essential to his right to prevail, such verdict or finding will be
set aside by this court, and a new trial granted.

(Syllabus by the Court.)

*Error from District Court, Texas County;*
*R. H. Loofbourrow, Judge.*

Action by J. D. Conwill against W. H. Eldridge.   Judgment
for defendant, and plaintiff brings error.   Reversed and remanded.

Plaintiff in error brought this action in the court below to
recover the sum of $1,117.74 upon two certain promissory notes
made and executed to plaintiff in error by defendant in error.
Defendant, who is represented by his guardian, admits in his an-
swer the execution and delivery of the notes, but as a defense
against any liability thereon he alleges:  First. That at the time

they were executed he was mentally incompetent and incapable of entering into a valid contract. Second. That the consideration for which said notes were executed was the purchase price of one jack, and that plaintiff secured the execution and delivery of said notes by false and fraudulent representations that the jack for which they were executed and delivered was sound and in every way and manner suitable for breeding purposes, when in truth and in fact he was entirely and wholly worthless for breeding purposes, and without value, all of which facts were known to the plaintiff at the time of his making said false and fraudulent representations, and were unknown to the defendant; that said representations were made for the purpose of deceiving and defrauding defendant; and that he did rely upon same, and was thereby deceived and defrauded. Defendant alleges that plaintiff was enabled to accomplish his fraud by the senility and weakness of mind of defendant. He alleges that the jack has since died, and he is for that reason unable to offer to return same to plaintiff; that the jack's death occurred without fault of defendant, but, if it be found that he was of value, defendant stands ready, able, and willing to pay into court, for the use of plaintiff, the amount of such value. By way of cross-petition, he further alleges that at the time of the execution of said notes, as a part of the consideration for the jack, defendant delivered to plaintiff two horses, which were of the reasonable value of $150, for which, on account of the worthlessness of the jack and the false and fraudulent statements of plaintiff, defendant has received no consideration whatever. He thereupon prays that plaintiff take nothing by the action, but that he have judgment on his cross-petition for the sum of $150. In a reply, plaintiff denied all the affirmative allegations of defendant's answer. The trial, which was to a jury, resulted in a general verdict and special findings of fact in answer to special interrogatories in favor of defendant, upon which the trial court rendered judgment in defendant's favor for the sum of $150 and costs.

*Crow & Gleason* and *R. L. Howsley,* for plaintiff in error.

*Wiley & Edens,* for defendant in error.

HAYES, C. J. (after stating the facts as above). During term time, on the 28th day of October, 1909, the issues in the case were joined. At this time the cause was set down, and thereafter came on for trial on the 2d day of the following November. On the last-mentioned date, plaintiff presented to the court his motion for continuance, upon the ground that one of his material witnesses had promised him that he would attend.the trial of the cause and testify whenever plaintiff would notify him to come, but that this witness had, after letter written to him by plaintiff advising him of the date, failed to attend, and was then absent. He sets forth in his motion the facts to which the absent witness would testify, if present. The overruling of this motion for continuance is the basis of the first assignment of error urged. Counsel for plaintiff contend in this court that by reason of section 5834, Comp. Laws 1909, the cause was not triable on the date for which it was set, and he urges in this court solely upon this ground that the court committed error in not granting to plaintiff a continuance. Said statute, where the issues thereto are settled during the term of the court, makes a case triable at the same term of court only after the expiration of ten days from the date the issues are made up. *City of Ardmore v. Orr, ante,* 129 Pac. 867. And it is error for the court to compel a party, over his objection upon this ground, to proceed to a trial of the case on a date earlier than ten days after the issues are made up. Such error on the part of the trial court renders the judgment voidable only, and not void. It is not a jurisdictional error, which cannot be waived by the party.

The statute is for the benefit of the parties to the action only. It secures to them in all cases a reasonable time after issues joined in which to secure witnesses and prepare for trial. It does not affect third parties, or the state, suing for the benefit of the parties only; they may consent to a trial upon an earlier date than that fixed by statute. By proceeding to trial without objecting thereto, a party acquiesces therein, and, after the trial has resulted adversely to him, he should not be permitted to object that the judgment was erroneous because the case was not triable. Plaintiff made no objection in the trial court that the case was not prop-

erly upon the trial docket, and therefore, under the foregoing statute, was not triable; but he there treated the case as if it was properly upon the docket, and sought a continuance upon the statutory ground of an absent witness. In this court he does not urge that the court committed error in overruling his motion for continuance upon the grounds upon which he sought the continuance in the trial court; but he here seeks to have the action of the court declared error upon another ground. Nothing is better settled than that one cannot proceed in the trial of questions in the trial court upon one theory, and, having lost, change front and try to prevail on appeal. *Bullen v. Arkansas, etc., Ry. Co.,* 20 Okla. 819, 95 Pac. 476; *Harris v. First, etc., Bank,* 21 Okla. 189, 95 Pac. 781; *Border v. Carrabine,* 24 Okla. 609, 104 Pac. 906.

Had plaintiff objected to proceeding to trial upon the ground that the case was not triable upon the date for which it was set, or had he made a motion to strike the same from the trial docket for such reason, and saved his exception to the action of the trial court in refusing to sustain his objection or motion, the act of the court would then be reversible error; but since he failed to do this, and treated the cause as properly on the trial docket and triable, and sought a continuance upon other grounds, he will be held to have waived his right under the statute and consented to the trial of the cause, except upon the grounds set forth in his motion, which are not urged in this court.

Several assignments are urged for reversal, complaining of the admission of testimony relative to the sanity or insanity of the defendant at the time he executed the notes. Several witnesses, who did not qualify as experts, after testifying as to their acquaintance with the defendant and to their observation of his acts, and some of them as to transactions with him, were permitted to give their opinions as to the soundness or unsoundness of his mind, or as to his competency to transact his business. The contention of plaintiff that a nonexpert witness may not give his opinion as to the soundness or unsoundness of mind of a person, because it states a conclusion, is opposed by the leading text-writers and weight of authority upon the question. Where nonexpert witnesses testify that they have observed any person

whose sanity is in question, and state the facts which they observed and upon which they base their opinions, they may give their opinions as to the sanity of such person. Elliott on Ev. vol. 1, p. 681; Wigmore on Ev. vol. 3, secs. 1917, 1938; *Atkins v. State of Tenn.*, 119 Tenn. 458, 105 S. W. 353, 13 L. R. A. (N. S.) 1031.

One of the grounds urged for a new trial in the court below and here is that the general verdict of the jury and some of the special findings of fact in favor of defendant are not supported by the evidence. The execution and delivery of the notes is admitted by defendant's answer. Plaintiff's ownership thereof at the present time is established by uncontroverted evidence. In order, therefore, for defendant to prevail in this action, it is necessary that he establish one of three defenses, to wit: That at the time of the execution of the notes he was entirely without understanding; or there has been a failure of consideration; or that the notes were procured by the fraud of plaintiff. There is a special finding of fact that defendant was at the time of the execution of the notes entirely without understanding. Persons entirely without understanding are incapable of making a contract, and any attempt on their part to do so is void; but we fail to find any evidence in the record that supports this finding of the jury. There is considerable testimony tending to show that defendant is weak-minded, and that as he has grown older the weakness of mind has increased; that he is hard of hearing, and is unable to read or write. But, by the same witnesses, it is established that up to the time of this transaction and afterwards he constantly transacted his own business, and, in doing so, has made a number of trades for and purchases of property. One witness, who had made trades with defendant, testified that he seemed flighty like. Another witness, who had rented land from him and had worked with him, testified that he was with him a great deal about the time the transaction involved occurred, and that he did not observe anything unusual in his actions, other than he had observed theretofore; that he had traded horses with defendant, and that the property he exchanged was worth as much as that which he received from defendant. A son of defendant testified that his

father, in making certain trades, had been cheated, or permitted the other person to get the advantage in the trade, and that he had been lax in enforcing or collecting obligations due him; but by the testimony of this witness it is shown that defendant made all his trades, and always looked after his own business, which consisted in farming and raising stock.

All of the evidence relative to the condition of defendant's mind is substantially of the character of the evidence above referred to; and while some of it tends to establish that defendant's mind was in such condition that he might have been more easily subjected to fraud, and advantage taken of him, than a person of sound mind and full understanding, none of it tends to establish that he was entirely without understanding. At the time of the execution of the notes, defendant's incapacity had not been judicially determined. In order for one of unsound mind, but not entirely without understanding, to rescind contracts made before his incapacity has been judicially determined, he must restore to the other party everything he has received from him, or must offer to return same upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so. Sections 5041 and 1137, Comp. Laws 1909. The contract of such a person is not void, but voidable. *Maas et al. v. Dunmyer,* 21 Okla. 434, 96 Pac. 591. Since there is no evidence tending to show that defendant was entirely without understanding, in order for him to prevail in this action, it is necessary for him to establish the alleged fraud of plaintiff in securing said notes, or the failure of consideration; and there are special findings by the jury to the effect that the notes were executed in consideration of the purchase price of the jack, and that the fraudulent representations as alleged in defendant's answer were made by the plaintiff, and that said jack was worthless.

Plaintiff testified in his rebuttal testimony that the notes involved were executed to him in payment for a horse of the present value of from $1,000 to $1,200, purchased by defendant from plaintiff, and now owned by defendant. A purported full abstract of the evidence is set out in plaintiff's brief, and plaintiff's counsel assert in their brief that there is no evidence whatever

to show that the jack was the consideration for which the notes were executed. Counsel for defendant have failed to set out in their brief or to direct us to any evidence in the record that establishes this issue. There is evidence showing that the jack was purchased by defendant from plaintiff and that plaintiff made false and fraudulent representations as to the condition of the jack; but the record is entirely silent as to what defendant was to pay for the jack, or how it was paid. One witness for defendant testified to statements of plaintiff to the effect that other considerations than these notes had been given by defendant to plaintiff for the horse, which plaintiff testified was the consideration of the notes; but this witness did not testify that the notes in controversy were given for the jack, or to any statement of plaintiff to that effect. Whether the purchase price of the jack was the consideration for the notes was squarely put in issue by the pleadings, and the burden was upon defendant to establish such fact before he could prevail in either his defense of failure of consideration or that the notes were procured by fraud.

The finding of the jury favorably to defendant upon his cross-petition is also unsupported by the evidence in essential particulars. The evidence establishes that several transactions have occurred between plaintiff and defendant at different times at or prior to the execution of the notes. Defendant's cross-petition alleges that, as a part of the consideration for the jack, he sold to plaintiff two horses, of the value of $150. There is evidence tending to show that at a time subsequent to the purchase of the jack defendant did sell to plaintiff two horses for the sum of $100, which the witness testified plaintiff stated he would credit upon the note for the jack; but as to whether the notes upon which it was to be credited were either of the notes in controversy the evidence is silent, and there is absence of any evidence as to the value of such horses. Referring to plaintiff's contention that such evidence is lacking, counsel for defendant in their brief state:

"It is further contended by plaintiff in error that there was no evidence tending to prove the $150 counterclaim asked for by defendant. We are frank to confess that the evidence on this

proposition was possibly not very definite; but there was evidence of the defendant showing that the defendant delivered to the plaintiff, as a part of the consideration for this jack, two horses or mares, and that there was an agreement at the time of the delivery of these horses or mares that the plaintiff should credit the defendant on the notes sued on in the sum of $100."

The admission of counsel that there is no evidence showing the value of the horses is correct; but their statement that the record shows that the purchase price of said horses was to be credited upon the notes sued upon is not supported by reference to any evidence in the record to that effect, and after a thorough search of the record we have been unable to find any. Appellate courts should be reluctant to set aside verdicts of juries that have been approved by the trial court; but where there is lacking any evidence reasonably tending to support any essential issue that was or must have been found in favor of the prevailing party in order to return a general verdict for him, or to support any special finding of fact in his favor essential to his right to prevail, such verdict or finding will be set aside by this court and a new trial granted. *Gergens v. McCollum,* 27 Okla. 155, 111 Pac. 208.

Several assignments urged are based upon instructions given over plaintiff's objection; but an examination of them discloses that those which are not wholly without merit would have been cured by the special findings of fact made by the jury, had all such findings been supported by evidence, and we therefore do not deem it necessary to consider these assignments.

For the reasons herein suggested, the judgment of the trial court is reversed, and the cause remanded.

DUNN, KANE, and TURNER, JJ., concur; WILLIAMS, J., not participating.