## GRAHAM v. COSBY et al.

No. 12924—Opinion Filed June 10, 1924.

Rehearing Denied July 29, 1924.

(Syllabus.)

1. **Damages—Stipulated Damages — Validity.**

A stipulation or condition in a contract providing for the payment of an amount which shall be presumed to be the amount of damages sustained by a breach of such contract. shall be held valid when from the nature of the case it would be impracticable or extremely difficult to fix the actual damage. (Section 5069, Comp. Okla. Stat. 1921.)

2. **Appeal and Error—Review of Equity Case.**

In an equity proceeding this court will weigh the evidence, but the decree of the trial court will not be set aside unless clearly against the weight of the evidence.

Error from District Court, Garfield County; J. C. Robberts, Judge.

Action by John S. Graham against E. R. Cosby, the Ranola Oil Company, and the Garfield County Bank, to recover 1,000 shares of stock of the Ranola Oil Company, which were placed in escrow in the Garfield County Bank under and by virtue of the terms of a certain contract executed between the Ranola Oil Company, party of the first part. John S. Graham and others. parties of the second part, and E. R. Cosby, party of the third part, dated October 4, 1919, and the supplemental contract between the same parties entered into October 11, 1919. From the judgment. plaintiff brings error. Affirmed.

Louie E. McKnight, for plaintiff in error.

W. J. Otjen, and Geo. W. Buckner, for defendant in error the Ranola Oil Company.

WARREN, J. This is an appeal from the district court of Garfield county by the plaintiff in error, John S. Graham, against the defendants in error, E. R. Cosby, the Ranola Oil Company, and the Garfield County Bank.

It appears that on October 4, 1919, the Ranola Oil Company, party of the first part, John S. Graham, J. Ad. Wylie, T. A. Appling, and A. M. Wilbern, parties of second part, and E. R. Cosby, party of the third part, entered into a contract whereby the Ranola Oil Company agreed to sell to E. R. Cosby an undivided 3-8 interest in certain oil properties, being its entire interest therein and being the entire assets of the company. The second parties, except Graham, also agreed by the same contract to sell to Cosby their entire interest in the said properties, being an undivided 1-8 interest therein. John S. Graham, plaintiff in error, was not contracting to sell anything by this contract, but was apparently included only for the reason that it was necessary for him to agree to dismiss certain pending lawsuits, and for the purpose

of a certain indemnity agreement with E. R. Cosby, the cause of this litigation. It developed that Graham expected certain collateral benefits in the way of selling to the same person other properties.

It appeared that the company would not enter into the contract unless 1 000 shares of its own stock was put with the Garfield County Bank with the contract. It was further stipulated in the contract that damages for the breach of the contract were extremely difficult to fix and impracticable to litigate and the said shares should therefore "be considered the consideration for this option to the Ranola Oil Company."

Cosby, it appears, did not own any shares of the Ranola Oil Company, so he arranged with Graham to furnish the requisite number to deposit and the following paragraph defines their obligations with reference thereto:

"That the said 1000 shares of stock of the Ranola Oil Company so placed in escrow with this contract by the said E. R. Cosby were obtained from John S. Graham for such purpose, and that the said E. R. Cosby for the purpose of indemnifying said John S. Graham for any loss by reason of the placing of said stock with said contract, hereby delivers to the said John S. Graham, 19,000 shares of the stock of the Ranger Rock Island Oil & Refining Company, and places the same in the Garfield County Bank with this contract; and in the event such sale is not consummated, it is agreed by the parties hereto that his damages shall be the 19,000 shares of stock so placed in escrow with this contract."

The Ranger Rock Island Oil & Refining Company was the owner of the other 3-8 interest in the properties involved in the contract, the landowner being the owner of the remaining 1-8 interest.

On the 11th day of October, 1919, an instrument designated a "supplemental contract" was entered into whereby the obligation of the company to convey its property to Cosby was changed to an agreement to procure its stockholders to assign their shares to Cosby and place them in the bank for delivery, the full amount to be paid if all stock was secured, and a majority in any event, but if less than the entire issue was assigned, then to be paid for in proportion to the amount delivered. The shares in an aggregate of about 90% of the issue were assigned and delivered to the bank under this provision.

Cosby's option to purchase this stock expired January 4, 1920, and the deal was not consummated. Cosby at the time assigned as his reason for not completing the transaction the fact that the Ranola Oil Company did not file with the bank as required by the first contract a resolution of the board of directors ratifying the contract. The company states that he stated at the time it was not necessary, in the first place, and then when too late made impossible requirements with reference to the meeting of the old board of directors at Marlow, the place of business of the company. They further demanded that the purchase money be produced and deposited, which demand was not complied with. Cosby at this juncture passes out as an active figure, being a defendant in error here, not complaining of the judgment of the trial court.

On February 13, 1920, John S. Graham filed his petition in the district court of Garfield county against E. R. Cosby, the Ranola Oil Company, and the Garfield County Bank, seeking the recovery of his 1,000 shares of stock delivered to Cosby and placed by him with the bank as "liquidated damages" or "consideration for this option." He alleges the contracts herein referred to; charges that the Ranola Oil Company failed and refused to comply with the contracts, and alleges that the contracts were ultra vires and void. He alleges the ownership in himself of the 1,000 shares of stock in the Ranola Oil Company because of the illegality of the contracts, alleges that the sum of $7,000 in dividends was paid upon said shares subsequent to the placing in the bank and that he is entitled to said dividends. Graham prays judgment in the alternative, first, for the shares of stock with dividends thereon; second, if he be held not entitled to the 1,000 shares of Ranola stock, that he be adjudged the owner of the 19,000 shares of stock of the Ranger Rock Island Oil & Refining Company; and, third, in the event his ownership of the 19,000 shares be held to be a special lien thereon, then for $45,000, which he had charged to be the value of his deposit. He apparently desired, though there is no prayer to that effect, if the third proposition was sustained, that the 19,000 shares be sold to pay his lien.

To this petition the Ranola Oil Company answered and filed its cross-petition, alleging the deposit of the 1,000 shares for the benefit of its stockholders: alleging the assignment and deposit of the 90 per cent. of the stock; the failure of Cosby to pay the purchase money therefor; the full compliance by the company with the contract, alleging that the shares were the purchase money for

the option granted. The plaintiff, Graham, replied with a general denial.

The Garfield County Bank answered to the effect that it was the depository for the contracts and for the 1,000 shares of stock of the Ranola Oil Company and for the 19,-000 shares of the Ranger Rock Island Oil & Refining Company. The bank pleaded its willingness to deliver the shares of stock to any party to the action the court adjudged entitled thereto.

A supplemental petition was filed by the plaintiff, alleging that the word "option" as used in the contract was a misnomer and alleging it to be in the nature of a forfeiture. It further alleged no damage to the company. To this supplemental petition the Ranola Oil Company alleged it to be in fact an option, and that the stockholders relying thereon placed their shares in the bank as provided in the contract. It alleged the fact that one well was producing thereon and two were being drilled, and that many opportunities arose for sale of stock, but that it was held because of the option. It alleges that Cosby failed and refused to release the stock, but notified the bank to hold it and it continued to hold it until wells 2 and 3 had been drilled, and that they failed to produce as anticipated. It alleged actual damages far in excess of the value of the stock. Other minor matters of damages are alleged.

A petition in intervention was filed by G. E. Burford, alleging himself one of the stockholders of the Ranola Oil Company, alleging them to be a numerous class, in excess of 1,000 persons impracticable to bring into the suit, and the intervention for the benefit of all, alleging compliance by the stockholders with the terms of the contract, and praying the delivery of the shares to the Ranola Oil Company for cancellation. An answer to this by the plaintiff was filed amounting to a general denial.

The court, on the 22nd day of January, 1921, rendered judgment holding the Ranola Oil Company entitled to the 1,000 shares of its own stock, and holding John S. Graham entitled to the 19,000 shares of the Ranger Rock Island Oil & Refining Company stock. The plaintiff, John S. Graham. excepted, filed motion for new trial, which was duly overruled, and appeal perfected to this court.

The plaintiff in error sets up the following specification of error in his brief:

"1st. That the contract was ultra vires on the part of Ranola Oil Company.

"2nd. That the contract of October 4, 1919, was breached by the failure of the board of directors to approve and file copy with bank.

"3rd. That the Ranola Oil Company was not entitled to the shares under the contract.

"4th. That there was no waiver of condition providing for ratification, etc."

The plaintiff in error argues that the contract was ultra vires because the company under its charter had no authority to do a brokerage business. Many decisions are cited showing acts of corporations not authorized by their charters invalid. These range from a brokerage company erecting a theatre, the buying and selling of stocks and assets of an insolvent corporation by a bank, to the selling of bonds upon commission by heating and ventilating concern. To our mind the arranging for the sale of its own stock, as a better manner of transferring the whole of its own assets, is in no way comparable with the line of decisions cited and is not without the natural and necessary powers of a corporation in the transaction of its own business. Indeed the articles of incorporation of this company provide that it may issue its corporate stock and sell same for money or its equivalent, and the mere fact that the stock may have already been sold and issued does not necessarily exclude the power to procure and resell. Graham's relation to this contract does not place him in a position where he can question this power even though his right to do so were undoubted. He was not a primary contractor with the company. The company's deal as to the sale of stock was with Cosby.

The only record connection Graham had with the deal was that he was to furnish Cosby with the 1,000 shares of stock of the Ranola Oil Company and for this service the contract provided the full and complete indemnity. Cosby is not in this court complaining of the ultra vires of the company and he had paid Graham for his stock in the very manner he agreed to. So far as the 1,000 shares were concerned and the indemnity therefor, this was a contract between Graham and Cosby; with that part of it the Oil Company had nothing to do.

The plaintiff in error next complains the contract of October 4, 1919, was breached by the company because the directors of the company failed to ratify the contract and file copy of the resolution with the bank. This does not take into consideration the fact that that provision of the first contract was abrogated by the second contract. If

the certificates of stock of a majority of shareholders were duly assigned and deposited in the bank awaiting the payment of the money, it would be a vain and useless thing for the company to ratify. There would be no necessity for a ratification to assure the purchasers they were getting this property. The assignment and delivery of the shares by the individual holders gave it to them. By the securing of these shares they would secure the company itself, could elect new directors and pass any resolutions they desired.

It is next contended that the contract was in the nature of a forfeiture, and for that reason the company would not be entitled to insist on the possession of the stock.

It is in testimony in this case that the company was suing for a one-eighth interest in the lease, which was very valuable; that in anticipation of this sale and under the contracts, this suit was dismissed with prejudice; that a second suit against Graham and Wylie for $45,000 was dismissed with prejudice, this second suit for commissions on sale of stocks alleged to have been retained illegally; that other persons during this period were endeavoring to buy the property at the same or higher valuation. Under this testimony the trial court found for the defendant Ranola Oil Company as to this 1,000 shares, in effect holding that the damages were difficult to fix, impracticable, or equalled, or exceeded the value of the stock. There is ample testimony to support the judgment of the trial court. While this court in an equity case will weigh the evidence, unless the judgment is clearly against the weight of the evidence, the findings of the trial court will be sustained. White v. Kroeger, 77 Okla. 46, 186 Pac. 477; King v. Gant. 77 Okla. 105, 186 Pac. 960; Salmon v. Johnson, 78 Okla. 182, 189 Pac. 537; Jacobs v. Hill, 78 Okla. 38, 188 Pac. 661. Aside from this, there is sufficient evidence in the contract and in the testimony to indicate this to be the agreed purchase price of an option and not a forfeiture.

Having held that the provision of the first contract providing for a ratification and deposit of a copy of resolutions to have been superseded by the supplemental contract, it is unnecessary to notice the 4th assignment of error.

In this case the plaintiff, Graham, contracted with Cosby to furnish him with the 1,000 shares of Ranola Oil Company stock to be used by Cosby in furtherance of this transaction, and in the contract it was agreed that Graham was to receive in lieu thereof 19,000 shares of Ranger Rock Island stock, assumed to be of equal value. Graham by the judgment of the trial court received all he contracted for, and Cosby is not complaining.

Finding no error, the judgment of the trial court will be affirmed.

McNEILL, V. C. J., and HARRISON, LYDICK, and GORDON, JJ., concur.