**MULLEN v. FIRST GUARANTY STATE BANK.**

No. 16349—Opinion Filed June 30, 1925.

Rehearing Denied Sept. 8, 1925.

(Syllabus.)

1. **Mortgages — Execution—Test of Mental Capacity.**

Where a mortgagor pleads mental incapacity as a defense against the validity of a mortgage the test of capacity to make a mortgage is that the mortgagor shall have the ability to understand the nature and effect of the act in which she is engaged, and the business she is transacting. To invalidate a mortgage upon the grounds of the mental incapacity of the mortgagor, it must appear that the mortgagor was incapable of comprehending what the effect of the execution and delivery would be upon the land described in the mortgage.

2. **Appeal and Error — Review of Equity Case—Sufficiency of Evidence.**

In an equity proceeding, this court will weigh the evidence, but the judgment of the trial court will not be set aside unless clearly against the weight of the evidence.

Error from District Court, Carter County; W. F. Freeman, Judge.

Action by the First Guaranty State Bank of Crossplains, Tex., a corporation, against Floy Mullen, by her guardian, L. V. Mullen. Judgment for plaintiff, and defendant brings error. Affirmed.

Sigler & Jackson, for plaintiff in error.

Dolman & Dyer, for defendant in error.

PHELPS, J. This case was originally filed in the district court of Carter county, Okla., by defendant in error, as plaintiff, against plaintiff in error, as one of the defendants, for the foreclosure of a certain real estate mortgage. Defendant, in the court below, defended principally, upon the grounds that at the time of the execution of the mortgage in question she was mentally incompetent. The cause was tried to the court, without a jury, who found in favor of the plaintiff, from which finding and judgment of the court appeal is prosecuted here.

For convenience the parties will be referred to as they appeared in the court below.

In appealing to this court counsel for the defendant discuss two assignments of error, in the first of which they contend that the trial court erred in admitting testimony to show that the mortgage in question was given to secure the note in evidence. We have carefully examined the record on this assignment of error, and, in our judgment the same is without merit, and the real question in the case is, What was the mental capacity or condition of defendant when the mortgage in question was executed? And to this assignment of error we will direct our attention and upon which we will dispose of the case.

Section 4981, Comp. Stats. 1921, reads as follows:

"A person entirely without understanding has no power to make a contract of any kind, but he is liable for the reasonable value of

things furnished to him necessary to his support, or the support of his family."

Much evidence was introduced as to the mental condition or capacity of defendant on the 19th day of December, 1922, when the mortgage in question was executed, and from the evidence introduced we learn, beyond question, that for sometime prior to said date and extending down to the present time the defendant was not mentally sound, the evidence being somewhat conflicting as to her exact condition in this respect. It appears at times she would be entirely rational and at other times would be irrational; that at all times, however, she was allowed to go and come at her will and pleasure and was not under any sort of restraint, except at her own will one witness describing her as "queer or cleverly eccentric," and another, a doctor, testified that he saw her occasionally and that her mental condition had been bad for several years. Her sister-in-law, who had occasion to observe her constantly, said that "there were times when Floy would be at herself." Another witness testified that she called upon defendant to assist her in preparing a paper for a club, and that defendant wrote a poem for her which she describes as "wonderful" and "contained merit," although the language was "excited and unusual." The record also discloses that on October 9, 1922, prior to the execution of the mortgage on December 19, 1922, defendant was appointed administratrix of the estate of E. C. Mullen by the county court of Carter county; that she qualified and served in that capacity until the 17th day of September, 1923, when she was removed upon the grounds of neglect of duty and refusing to account for monies collected by her. Upon the trial of this cause in the district court of Carter county the trial court found that "the said Floy Mullen was not insane or incompetent at the time of the giving of said mortgage."

Counsel for defendant cite Norris v. Dagley, 64 Okla. 171, 166 Pac. 718, holding that:

"Where the evidence showed that a woman who executed certain notes and a mortgage given to secure same had, prior to the date thereof, been committed to the asylum for the insane, and was afterwards paroled into the custody of her husband, and had later, after the execution of said instruments, been recommitted to the asylum, that at all times between these dates she was suffering from a mental disease of slow progress and her condition grew steadily worse; that she suffered from delusions, and, while in the custody of her husband, was guarded by a man or kept locked in a room, that she would frequently have fits, and every two or three days become violent and wanted to fight, and that she was irrational and unable to carry on an intelligent conversation upon any subject, and this condition was shown to exist up to within a very few days of the execution of the said notes and mortgage — the court was warranted in finding that she was wholly without understanding within the meaning of the statute."

They also cite Long v. Anderson, 77 Okla. 95, 186 Pac. 944, holding that:

"A person entirely without understanding has no power to make a contract of any kind, and is only liable for the reasonable value of things furnished him for his support or the support of his family. Under this section the test of the capacity to make a deed is that the grantor shall have the ability to understand the nature and effect of the act in which he is engaged, and the business he is transacting; and, where it is made to appear that such grantor was incapable of comprehending that the effect of the deed when made, executed, and delivered would be to divest him of the title to the land set forth in the deed, the same is void."

"Where it is shown that the grantor executing a deed has been an idiot all his life, has never transacted any business of any character, cannot read or write, or understand the simplest matters, he is 'entirely without understanding, within the meaning of the statute."

However, the facts in the above cited case are materially different and show a much greater aggravated case of mental derangement than the evidence discloses in the case at bar. We are not disposed to place a narrow, or indeed a very strict, construction upon the wording of section 4981, Comp. Stats. 1921, referring to persons "wholly without understanding." Even persons violently insane are, at times, not "wholly without understanding." but it could not be contended that an insane person, in such condition, is capable of executing a valid mortgage. Fortunately, we are not without precedent in construing this section of the statute. In Miller v. Folsom, 49 Okla. 74, 149 Pac. 115, this court had this statute under consideration and held that:

"The test of capacity to make a deed is that the grantor shall have the ability to understand the nature and effect of the act in which he is engaged and the business he is transacting. To invalidate a deed it must appear that the grantor was incapable of comprehending that the effect of the deed, when made, executed, and delivered, would be to divest him of the title to the land set forth in the deed."

The same question was again before this court in Loman v. Paullin, 51 Okla. 294, 152 Pac. 73, wherein this court said:

"Mere weak-mindedness, whether natural or produced by old age, sickness, or other infirmity, unaccompanied by any other inequitable incidents, if the person has sufficient intelligence to understand the nature of the transaction, and is left to act upon his own free will, is not a sufficient ground to defeat the enforcement of an executory contract, or to set aside an executed agreement or conveyance." (Following the rule laid down by Pomeroy's Equity Jurisprudence, vol. 2, section 947.)

And in the body of the opinion this court used the following language:

"The real test in such a case is: Did he possess sufficient intelligence to understand what he was doing; that is, the effect of his acts? In this case, that he was parting with the particular property he was disposing of, the disposition he was making of it, and the person to whom he was conveying it?"

And in Duroderigo v. Culwell, 52 Okla. 6, 152 Pac. 605, this court, further discussing this section of the statute, said:

"* * * The law seems to be settled in this state that where a person has not been adjudged incompetent, his deed is not void, unless he is shown to have been 'entirely without understanding' at the time of its execution."

Therefore, to render a contract voidable on account of the mental incapacity of one of the parties to it, it is not enough that such party was at times, from whatever cause, lacking in sufficient sanity to understand what he was doing, but the evidence of his defective intelligence must relate to the immediate time of making the contract. A deed, mortgage, or other conveyance or contract made by an insane person, but during a lucid interval before his incapacity has been judicially determined, is valid and enforceable. A lucid interval, as the term is used in medical jurisprudence, is an interval occurring in the mental life of an insane person during which he is completely restored to the use of his reason, or so far restored that he has sufficient intelligence, judgment, and will to enter into contractual relations, or perform other legal acts, without disqualification by reason of his disease. Black on Rescission and Cancellation, sections 260, 261.

This principle is followed by this court in Conwill v. Eldridge, 35 Okla. 537, 130 Pac. 912. In that case the evidence showed that the party was not of sound mind or full understanding, but this court held that it was necessary to show, in order to avail himself of that defense, that he was "wholly without understanding" at the time of the execution of the instrument.

In the case at bar the notary public who took the acknowledgment of the defendant to the mortgage in question testified that at the time said acknowledgment was taken she talked with the defendant and that she observed nothing unusual in her talk, conduct, and demeanor, and that "she was just like any other sensible person," although she has subsequently been adjudged insane, committed to the hospital for the insane, and appears in this proceeding by a guardian. We say in this case, as this court said in the case of Derry v. State, 109 Okla. 244, 235 Pac. 158, where plaintiff in error was seeking to avoid the foreclosure of a mortgage upon the grounds that she was mentally incompetent at the time of its execution:

"The trial court heard all of the testimony and observed the witnesses and was better able by reason thereof to determine the weight and value of their testimony than is this court from the mere reading of the record."

In Graham v. Cosby, 107 Okla. 9, 227 Pac. 888, this court, following a long line of decisions extending practically from the creation of the court down to the present time, said:

"In an equity proceeding, this court will weigh the evidence, but the decree of the trial court will not be set aside unless clearly against the weight of the evidence."

We have carefully examined the record in this case, and we cannot say that the judgment of the district court was clearly against the weight of the evidence—indeed it is amply supported by the weight of the evidence, and is therefore affirmed.

NICHOLSON, C. J., and MASON, LESTER, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See under (1) 27 Cyc. p. 1042. (2) 4 C. J. p. 900, § 2869.