## OKLAHOMA NATURAL GAS CORPORATION v. LAY.

No. 25301. Sept. 25, 1935.

Rehearing Denied Oct. 22, 1935.

Application for Leave to File Second Petition for Rehearing Denied Nov. 26, 1935.

Allen, Underwood & Canterbury, for plaintiff in error.

Paul Pinson and Erwin & Erwin, for defendant in error.

PER CURIAM. The plaintiff in error will be referred to as defendant, and the defendants in error will be referred to as the plaintiffs.

This is an action brought by Julia A. Lay, personally and by her son and next friend, W. P. Lay, as plaintiffs, against the Oklahoma Natural Gas Corporation for a rescission of contract of purchase of 20 shares of preferred stock in defendant company of the par value of $100 each, on the ground that Julia A. Lay was mentally incompetent and of unsound mind at the time of purchase of such stock. The transaction was made on the 13th day of November, 1929, on which day the defendant company issued its stock certificate for 20 shares to Julia A. Lay, for which said Julia A. Lay paid $2,000. The plaintiffs plead that a disaffirmance and rescission of such contract of purchase was made on or about August 15, 1932, at which time a return of said stock certificate and all dividends received were tendered to defendant company. At the same time plaintiff demanded a return of $2,000, with legal interest from date of purchase contract.

To this petition the defendant demurred, which demurrer was overruled. The answer admits that Julia A. Lay acquired 20 shares of stock in defendant company on the 13th day of November, 1929, for which she paid $2,000. Otherwise, the answer is in effect a general denial.

A jury was called. The plaintiff offered the evidence of two daughters, a son, and a merchant where Julia A. Lay traded, and rested. Thereupon, the defendant demurred to the sufficiency of such evidence to support a judgment. This demurrer was overruled, and the defendant elected to stand on its demurrer to the evidence. The plaintiff then moved for an instructed verdict. Thereupon, the court instructed the jury to return a verdict in favor of plaintiff for $2,000, with interest at 6 per cent. per annum from November 13, 1929, which was done. Upon this verdict judgment was rendered for plaintiff. To reverse this judgment, the defendant appeals.

The gist of the testimony was that Julia A. Lay was about 68 years of age at time of the trial, and that some twelve years before purchase of this stock, she was canning berries and she either had a stroke or became overheated. A doctor was called at the time. This doctor was dead at time of trial of this case. After the canning incident, the plaintiff suffered with severe headaches at times. This affliction at canning time caused a partial loss of hearing and affected her memory. She would become restless at times, nervous and take crying spells, lasting a half day and longer occasionally. She was about 65 years old when the stock was purchased. She did some of the housework and took eggs to the store and exchanged for merchandise. She would tell her children that her husband was drinking and

refer to empty pickle bottles as evidence. Her children swore that their father never drank. This would indicate some degree of delusions. Many other incidents were related by the witnesses. All four witnesses said that plaintiff was not mentally competent to transact so important an act of business as purchase of $2,000 of stock in a corporation. This opinion was given after each witness had first related acquaintance and dealings with her, and his or her observations of her conduct, act and demeanor.

We do not understand that plaintiffs claim that Julia A. Lay was "a person entirely without understanding." The right to rescind is based on section 9403, Okla. Stat. 1931, which is as follows:

"A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission without prejudice to the rights of third persons, as provided in the article on extinction of contracts."

The petition pleaded that plaintiff, Julia A. Lay, "was mentally incompetent and of unsound mind," on the date of the transaction of the purchase of said stock. We think that this is a sufficient allegation to meet the requirements of above section, and that the court did not err in overruling the demurrer of the defendant to the petition of the plaintiffs.

We think that the lay witnesses might give their opinion as to her competency to transact business.

"In a suit to cancel a deed on the ground of mental incapacity of the grantor, nonexpert witnesses acquainted with the grantor, and who have had sufficient opportunity to inform themselves of her mental condition, having stated the facts which they observed and upon which they base their opinion, may express an opinion as to her competency to execute the conveyance." Campbell v. Dick, 71 Okla. 186, 176 P. 520.

To the same effect are the following decisions of the Oklahoma court: Conwill v. Eldridge, 35 Okla. 537, 130 P. 912; Farmers & Mer. Bank v. Haile, 46 Okla. 636, 149 P. 214; In re Carney's Guardianship, 110 Okla. 165, 237 P. 111.

The counsel for defendant contend in their brief that unsoundness of mind cannot be established by lay testimony alone, and that some expert testimony is necessary. They cite no authorities directly to this point. We do not think that the cases cited by them are applicable to this kind of a case. The

court knows of no decision requiring expert testimony in this kind of a case.

The trial court heard the evidence and saw the demeanor of the witnesses, and held that the evidence of the plaintiffs was sufficient to justify a rescission. Counsel for defendant contend that the evidence was not sufficient to show that Julia A. Lay was "a person of unsound mind" as defined by the statute.

Section 9396, Okla. Stat. 1931, is as follows:

"Persons of unsound mind, within the meaning of this chapter, are idiots, lunatics, and imbeciles."

"The word 'lunacy' was originally used to designate periodical sanity, but it is not confined to that meaning now, and is generally regarded as having the same extent of meaning as the word 'insanity.' In its strictest sense, the term implies unsoundness of mind, and either by statute or by construction the term 'lunacy' may mean or include every kind of unsoundness of mind except idiocy." 32 C. J. 615.

A lunatic is a person affected by lunacy. See Webster's Dictionary. It will be thus observed that a lunatic is an insane person, or a person of unsound mind.

"The word 'insane' ordinarily implies every degree of unsoundness of the mind or of mental derangement, from temporary nervous excitement to acute insanity, and therefore includes the extreme case of an entire want of understanding." 32 C. J. 613, par. 82.

" 'Unsoundness of mind' has been judicially declared to be synonymous with 'insanity.' It exists where there is an essential privation of the reasoning faculties, or where a person is incapable of understanding and acting with discretion in the ordinary affairs of life." 32 C. J. 621, par. 71.

"A lunatic is a person of deranged or unsound mind; a person whose mental faculties are in the condition called 'lunacy'; one who possessed reason, but through disease, grief, or other cause has lost it. The term is especially applicable to one who has lucid intervals and may yet, in contemplation of the law, recover his reason. Although anciently, only those insane persons who enjoyed lucid intervals were regarded as lunatics, at the present time either by express statutory provision or by construction, the word 'lunatic' may mean and include all insane persons or persons of unsound mind, sometimes including and sometimes excluding, idiots, and the term is not limited to persons having lucid intervals." 32 C. J. 624, par. 14.

It will thus be observed that a lunatic is an insane person or a person of unsound mind, and that the word "insane" is used in

the broad sense and literally means not sane. It is not limited to the ancient meaning. Insane or of unsound mind refers to a mental condition produced by age, disease, grief or affliction. The fact that the statute uses the words, "unsound mind, but not entirely without understanding," means that the word "lunatic" is to be given a generic and broad sense. Having concluded that the evidence was sufficient to establish that Julia A. Lay was a "person of unsound mind, but not entirely without understanding," we will next consider her right to rescind.

Said section 9403 further provides that a contract "is subject to rescission without prejudice to the rights of third persons as provided in the article on extinction of contracts." No right of third persons appears in the record. We will now consider the article on extinction of contracts. The section under extinction of contracts applicable to this case is section 9500, Okla. Stat. 1931, which is as follows:

"Rescission, when not effected by consent, can be accomplished only by the use, on the part of the party rescinding, of reasonable diligence to comply with the following rules:

"First. He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability and is aware of his right to rescind; and,

"Second. He must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable, or positively refuses, to do so."

The offer to rescind must have been made in time, for we have just found that p'aintiff was a person of unsound mind, but not entirely without understanding; hence, she was under a "disability" mentioned in paragraph one of above section. Section 102, Okla. Stat. 1931, is as follows:

"If a person entitled to bring an action other than for the recovery of real property, except for a penalty or forfeiture, be, at the time the cause of action accrued, under any legal disability, every such person shall be entitled to bring such action within one year after such disability shall be removed."

Julia A. Lay was still under "disability" when the suit was filed, as she sues by her next friend. Hence she is not barred by reason of unnecessary delay or laches.

The second paragraph provides that she must restore everything of value which she received under the contract. This she seems to have done. It seems from the evidence that the stock certificate for 20 shares and, a dividend certificate for $32.50 were everything received by plaintiff from defendant. The record shows these were offered to be returned before suit. The record shows:

"Mr. Erwin: It may be stipulated, then, between the parties previous to the institution of this suit, the stock certificate and dividend certificate, together with anything else of value received on the stock, were offered and, tendered to the defendant and the tender refused."

The tender of stock and dividend certificate was renewed at close of trial. This seems to meet the requirements of the statute. We do not think that section 9498, Okla. Stat. 1931, applies to persons of unsound mind. The ground for rescission mentioned in said section as duress, menace, fraud or undue influence applies to competent persons. Persons of unsound mind by said section 9403 have the same rights of rescission as competent persons do who act under duress, menace, fraud or undue influence. Julia A. Lay had never been adjudged incompetent by any court. The following decision seems to state the law applicable to this case:

"Under sections 4982 and 5079, where a person of unsound mind desires to, they may rescind a contract, but rescission must be made in accordance with the two sections just quoted, supra." Monarch Loan Co. v. Shellenberger, 159 Okla. 247, 15 P. (2d) 53.

The said sections 4982 and 5079, C. O. S. 1921, are the same as sections 9403 and 9500, Okla. Stat. 1931. In the above case the court held that Mrs. Shellenberger, having failed to restore the money received on the note and mortgage, was not entitled to cancellation of the note and mortgage. But, in the case at bar, Julia A. Lay has offered to restore the 20 shares of stock and the dividend certificate, being all the property received under the contract to purchase. Consequently, she has fully complied with said section 9500. To the same effect as the above decision are the following decisions of the Oklahoma courts: Duroderigo v. Culwell, 52 Okla. 6, 152 P. 605; Maas v. Dunmyer, 21 Okla. 434, 96 P. 591.

The defendant raises the question that the plaintiffs did not show that the contract of purchase was not made during a lucid interval. The evidence further shows that after the heat stroke, she used obscene and cursing language, which she did not do before the stroke; that she would get mad at some of her children and remain mad for a long time without any known cause. The witnesses say her mental condition was different after the heat stroke and continued

as such up to the present time, only worse at times, but never right. Children say their mother had an unnatural, foolish expression on her face all the time since the stroke. In the case of Mullen v. First Guaranty State Bank, 113 Okla. 84, 239 P. 161, the court defined a lucid interval as follows:

"A lucid interval, as the term is used in medical jurisprudence, is an interval occurring in the mental life of an insane person, during which he is completely restored to the use of his reason, or so far restored that he has sufficient intelligence, judgment and will to enter into contractual relations, or perform other legal acts without disqualification by reason of his disease."

We think that the evidence showed that there were no lucid intervals after the stroke during which she was completely restored to the use of her reason, or in which she was without mental disqualification by reason of said affliction. The law under section 9498 allows a person to rescind when acting under "undue influence," and we think that the law is liberal enough to throw its protecting arm around an aged woman in the afflicted condition shown by the evidence in this case, when she offers to do equity and restore to the defendant everything received from it under the contract to purchase.

The province of a jury is to decide between controverted or disputed questions of fact. But, in this case, there were no controverted or disputed questions of fact to be submitted to the jury, for the defendant stood on its demurrer to the evidence and offered no testimony.

"Where the evidence introduced by the plaintiff makes out the plaintiff's case, and the defendant introduces no evidence to rebut it, the court should instruct a verdict for plaintiffs". City of Claremore v. Southwestern Surety Ins. Co., 82 Okla. 118, 198 P. 573.

To the same effect are the following decisions: General Acc., Fire & Life Assur. Corp. v. Thompson, 101 Okla. 138, 223 P. 666; Harwell v. Wood, 98 Okla. 196, 221 P. 1023.

Therefore, the court finds that the judgment of the lower court should be, and the same is hereby, affirmed.

The Supreme Court acknowledges the aid of Attorneys Theodore Pruett, Ted C. Morgan, and Grover C. Wamsley in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Pruett and approved by Mr.

Morgan and Mr. Wamsley, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.