Roland W. BOSWELL and Ursula G. Boswell, Husband and Wife, Plaintiffs in Error,

v.

Robert G. GROVES, Guardian of the Estate of Myrtle Mae Boswell, An Incompetent Person, Defendant in Error.

No. 40444.

Supreme Court of Oklahoma.

Dec. 17, 1963.

Hughes & Hughes, Hobart, for plaintiffs in error.

Scarbrough, Grider & Worrell, Altus, for defendant in error.

JOHNSON, Justice.

The defendant in error, hereafter referred to as plaintiff, filed this action as the statutory guardian of Myrtle Mae Boswell, an incompetent, against Roland W. Boswell, adopted son of the incompetent, and his wife, Ursula, to cancel certain deeds of conveyance made by the incompetent and for an accounting. The property involved consisted of three tracts: a farm of 156.27 acres; Lot 6 in Block 16, Julian Addition to the City of Altus; and Lot 18, Block 4, Latham Addition to the City of Altus, all located in Jackson County, Oklahoma.

The petition alleged the following grounds for cancellation and accounting:

1. That the conveyance of Tracts One and Two was to Roland W. Boswell under the express representation by him that he would use the rentals from same to provide Myrtle Boswell with adequate housing, care, maintenance and medical treatments for the remainder of her life.

2. That Tract Three was conveyed to Luderson and Claiborne at the insistence and influence of said defendants.

3. That defendant Boswell has mortgaged the property conveyed to him for $21,000.00 and used at least a portion of such funds to discharge his personal indebtedness.

4. Seeks an accounting for cash and intangibles delivered to defendant Boswell and proceeds derived from the sale of Tract Three.

5. That all of said property was obtained from plaintiff by fraud, imposition and misrepresentations of defendant Boswell and while Myrtle Boswell was incompetent.

The defendants, Roland W. Boswell and Ursula G. Boswell, filed their answer wherein they pled a general denial, except for admissions of specified facts. The answer

specifically denied misrepresentations, incompetency of the grantor, Myrtle Mae Boswell, and fraud or undue influence. The plaintiff's reply consisted of a general denial.

Upon the issues thus joined, trial was had without a jury, and judgment entered for the defendants. The plaintiff filed a motion for new trial, which motion challenged the sufficiency of the evidence to sustain the court's judgment and contained allegations of newly discovered evidence. Upon hearing the motion, the trial court granted same and also certified his disqualification to sit further in the case because of his relation by marriage to one of the proposed witnesses whose affidavit was attached to the motion for new trial. From the granting of such new trial, the defendants (plaintiffs in error) have appealed.

Three propositions for reversal are submitted:

"Proposition I: That the original judgment of the trial court in its findings for the defendants is sustained by ample evidence and should not be disturbed by an order granting a new trial.

"Proposition II: That the affidavits in support of plaintiff's motion for new trial on the grounds of newly discovered evidence are shown upon their face to be cumulative or contradictory to evidence introduced in chief and are insufficient in law to sustain a motion for new trial on newly discovered evidence.

"Proposition III: That the trial court erred in ruling on the motion for new trial after disqualifying himself to retry the case, since such disqualification would preclude any further action of any kind on the part of the trial court."

We shall consider the third of these contentions first. It is the contention of defendants that after the judge disqualified himself from retrying the case, he could not pass upon the motion for new trial.

It should be borne in mind that only one of the witnesses whose affidavits were attached to the motion for new trial was related to the judge. This witness did not testify at the trial.

The defendants rely upon statement of the trial court made at the time of the passing upon the motion for new trial and shown in the casemade. Upon consideration of suggested amendments to the casemade, the court in a further statement said:

\* \* \* \* \* \*

"Let the Court clarify the record to this extent: The Court sustained the motions for new trial on November 9, 1962, with the attorneys for both sides present, then some two hours later the Court dictated to the reporter a statement, as shown by page 236 of the case-made, which clearly does not reflect the Court's intended judgment. A Journal Entry was not *present* to the Court for some two months. The Court finds that the Journal Entry, on page 239 of the case-made, and the order sustaining motion for new trial, appearing on page 237 of the case-made correctly reflects the Court's judgment, and said Journal Entries should be incorporated in the case-made."

As stated by the Court, the journal entry is the official entry and controlling. In the Journal Entry filed on January 10, 1963, the court said:

"On this 9th day of November, 1962, came on for hearing the motion of the Plaintiff herein for a new trial, \* \* \* and the Court having studied the affidavits submitted in support of plaintiff's motion, having heard the arguments of counsel and being fully advised, finds that Plaintiff's motion for a new trial should be sustained *for the reasons submitted in Plaintiff's motion for new trial.* (Emphasis ours.)

\* \* \* \* \* \*

The reasons stated in Plaintiff's Amended Motion for New Trial were, first, "that the verdict is not sustained by sufficient evidence, and is contrary to law \* \* \*,"

and, second, "that there was error in the assessment of the amount of recovery," and, third, "for the further reason that the Plaintiff has now newly discovered evidence, same being material for said Plaintiff which he could not, with reasonable diligence, have discovered and produced at the trial."

■ It is obvious that the judge was not disqualified from any duty performed in the past, but knowing that the next trial would be held with the possible additional testimony of a relative, he voluntarily disqualified himself from presiding in the future. There is *no* contention by either litigant that the judge is not disqualified from presiding at the new trial, but the sole contention is that *because* of the voluntary disqualification of the judge he cannot pass upon the motion for new trial. We consider this contention to be wholly without merit.

We do not believe that the court abused his discretion in sustaining the plaintiff's contention that the evidence was insufficient to sustain the court's judgment.

The evidence introduced at the trial was in conflict as to the competency of Mrs. Boswell. When the trial judge rendered his decision, his remarks concerning the reasons for it are in the record and read in part as follows:

"* * * Whether or not she was competent at the time she executed this deed, there is a direct conflict in the medical testimony.

"The fact remains that she executed this deed on the 28th day of February, 1961, and some three months later, or four months, she executed another deed.

"The testimony of Waldo Oden and Bill Ivester and Ben Claiborne and his wife would have to lead the Court to the conclusion that she was competent, and that she knew what she was doing at the time this deed was executed.

"She wasn't competent here today. She has a condition that is growing progressively worse; the doctors say she will never get better, will only get worse.

"The Court doesn't see it that she made a gift of this property; it wasn't her intention. It wasn't from her testimony and it wasn't from his testimony that she was making him a gift of the property; this is evidenced by the note which is in evidence, in the amount of $19,300.00; she sold this property to Buddy with the understanding that he was going to take care of her, and take care of the property, as long as she lived. The Court is not asking it, but half of this property goes to his sister. It doesn't operate that way as long as he puts all this money in his funds, and buys things and makes expenses. From her viewpoint, as he testified, when she discovered he increased the mortgage on the farm some $13,000.00 over the original amount; to her he squandered some $13,000.00. I know from his statement alone that from his viewpoint that he needed to improve the property. It is not hard to take run down property and spend fabulous sums on it. I am not sure, even though he was trying to do his best, *a* am awfully afraid he is going down hill with the property all the time; it is not that he is trying to do that, but that is the way the thing goes.

"Whatever is necessary to protect her and that property, that's what the Court wants to do. Regardless of the fact that 1970 is the payment date of the note, there is no evidence that the property will be in existance in 1970 and that she will be alive.

"The only thing the Court sees in holding that she was competent on the date the deed was made, was that he agreed to take care of her and intended to protect her and she have the security of the property; if she can do that— I think it is a matter of impossibility; or to convert this $19,000.00 note to a —there is a first mortgage; it would not be any value against that existing

indebtedness. To impress this property, as a first mortgage on this town property to the extent of $19,000.00; whatever kind of loan you have on that property.

"MR. HUGHES: Prudential.

"THE COURT: I think she should have the guarantee that this property is not going to be completely lost. The way things are going, something could happen to Buddy and she would be completely on charity in a year's time. His good intentions to take care of her is not backed by any security; she is entitled to be protected to that extent. I think it should be set up so that he can't borrow any additional money on it; in other words, I will make the $19,300.00 note a first lien on the property and the mortgage, whatever the extent is, whatever it amounts to, on this farm property, over. and beyond what the Prudential Insurance Company has in it.

"If you would like the specific findings of fact and conclusions, I am finding that this note was executed; Waldo Oden testified that he saw the executed note. It will be the conclusion of the Court that he gave the note as security; that the consideration for this was that he would take care of her, plus the note executed in the amount of $19,300.00. The note is converted to a first lien on all the property, subject to the existing indebtedness."

The reasons set forth in this comment by the trial judge show the closeness of the question involved. Even the trial judge indicated that his decision might have been justified if the other way.

Thereafter, he is presented with the evidence of a witness who did not previously testify. The affidavit containing the evidence of this witness reads as follows:

\*     \*     \*     \*     \*     \*

"1. That some three months prior to the time that Mrs. MYRTLE MAE BOSWELL suffered a cerebral stroke in the State of New Mexico, that the said MYRTLE MAE BOSWELL and the Affiant herein were in route to the Scott and White Clinic, Temple, Texas for the purpose of undergoing a complete physical check-up, and that during the course of this trip, Mrs. MYRTLE MAE BOSWELL revealed her desire and intentions as to the disposition of her property in the event she should become disabled and in regard to the disposition of her property in the event of her death; that the said MYRTLE MAE BOSWELL did not desire nor intend to live with nor become dependant upon ROLAND W. BOSWELL in the event she should become disabled; that she did not repose any confidence or faith in the ability of said ROLAND W. BOSWELL to manage her affairs; that she had on a previous occasion denied and refused a request from said ROLAND W. BOSWELL that he be permitted to manage her business affairs; that she desired and intended to preserve and maintain her property in order that she might enjoy the benefits therefrom during her natural life; that she had previously written and executed her Will as to the disposition of her property in the event of her death; that because of her lack of confidence in the ability of said ROLAND W. BOSWELL to manage her affairs, that she had made BONNELL CRABB the executor of her Will.

"2. Affiant further states that after MYRTLE MAE BOSWELL suffered her cerebral stroke and was returned to Altus, Oklahoma, that Affiant visited with the said MYRTLE MAE BOSWELL on numerous occasions and that during the course of these visits the said MYRTLE MAE BOSWELL was unable to carry on a conversation with Affiant and on many of these occasions the said MYRTLE MAE BOSWELL did not recognize Affiant and on one particular occasion the said MYRTLE MAE BOSWELL appeared to be un-

der the influence of drugs, and during the course of said visit MYRTLE MAE BOSWELL became unconscious in such a manner as appeared to be from the effect of drugs.

\*    \*    \*    \*    \*    \*

The affidavit of Robert G. Groves also averred that on the 30th day of October, 1962, he discovered for the first time the evidence above and that he could have proven by one H. B. Haynie that certain medical expenses incurred by Myrtle Mae Boswell in New Mexico had not been paid, and that in addition to acquiring all the real property belonging to Myrtle Mae Boswell, he could prove that Roland W. Boswell acquired title to a certain automobile, a 1956 Pontiac two-door sedan, the proof of transfer of title to said automobile being obtained from the Tax Commission records.

The above evidence concerned the period of time *prior* to the execution of the deeds in controversy and may have persuaded the trial judge that when this evidence was produced that the consideration thereof by a new judge might result in a different conclusion from that which he had previously reached; hence the granting of the new trial.

The rules to be applied are set forth in Marten v. Wagner, 198 Okl. 273, 178 P.2d 618, as follows:

"We think the true rules, deducible from the authorities, are (1) that where there is weakness of mind in the grantor, arising from age, sickness or other cause, though not sufficient to prevent him from understanding the nature and effect of executing the conveyance at the time it is executed, the burden is upon the grantor seeking cancellation to prove, in addition to weakness of mind, inadequacy of consideration or that the instrument was procured as a result of fraud, menace, duress, undue influence or mistake practiced by or on behalf of the grantee in obtaining the conveyance; and (2) where the unsoundness of mind is so great that the grantor cannot understand the nature

and effect of the transaction, although he is not entirely without understanding and his incapacity has not been judicially determined, he or his guardian subsequently appointed may, as authorized by 15 O.S.1941 § 23, rescind by complying with 15′O.S.1941 § 235, and such grantor his guardian subsequently may secure cancellation of the conveyance without proving inadequacy of consideration, fraud, menace, duress, undue influence or mistake, where this can be done without prejudice to the rights of third persons. Miller v. Folsom, 49 Okl. 74, 149 P. 1185; Scott v. Scott, 131 Okl. 144, 268 P. 245; Canfield v. Canfield, 167 Okl. 595, 31 P.2d 149; Oklahoma Natural Gas v. Lay, 175 Okl. 75, 51 P.2d 580; \* \* \*."

We are satisfied that under the above rules the trial judge is the one and only one to determine the true state of facts under this record.

It but remains to ascertain whether there has been an abuse of discretion upon his part in the granting of a new trial.

In the case of Jay Nuckolls Truck Line, Inc. v. Stephens, Okl., 380 P.2d 248, the syllabus reads:

"This court is committed to the rule that a motion for new trial is addressed to the sound legal discretion of the trial court, and that every presumption will be indulged in favor of the ruling of the trial judge, and that where such motion is granted then on review this court will not disturb the same in the absence of a clear and convincing showing that such action constituted error on an unmixed question of law or that such action was arbitrary or capricious.

"The judge who presides at the trial of a case, hears the testimony of the witnesses, observes their demeanor, and has a full knowledge of the proceedings had and done during the process of the trial, is in a better position to know whether or not substantial justice has been done than any other person.

Where such judge sustains a motion for a new trial, it will require a clear showing of manifest error and an abuse of discretion before this court on appeal will be justified in reversing such ruling of the trial court."

■ The above is one of the latest expressions from this court. We have carefully examined the record and made a résumé thereof herein. We hold that such record does not reflect grounds for reversal within the above rule.

The judgment of the trial court granting a new trial herein is affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and WELCH, DAVISON, WILLIAMS, IRWIN and BERRY, JJ., concur.